**UNITED STATES of America,
Appellee–Cross–Appellant,**

v.

**William Andrew MOORE, James A. Carrington and Joseph Donahue, Defendants–Appellants–Cross–Appellees.**

**Nos. 1582, 1583, 1554, 1809, Dockets 91–1024, 91–1025, 91–1026, 91–1066.**

United States Court of Appeals,
Second Circuit.

Argued July 24, 1991.

Decided June 25, 1992.

As Amended July 10, 1992.

Charles L. Roberts, El Paso, Tex., for defendant-appellant-cross-appellee Moore.

Thomas M. Flannery, Albany, N.Y., for defendant-appellant-cross-appellee Carrington.

Meave M. Tooher, Albany, N.Y., for defendant-appellant-cross-appellee Donahue.

Bernard J. Malone, Jr., Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., Northern District of New York, Barbara D. Cottrell, Asst. U.S. Atty., Albany, N.Y., of counsel), for appellee-cross-appellant.

Before WINTER, MAHONEY and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

This appeal and cross-appeal arise out of the convictions and sentences of Joseph F. Donahue, James A. Carrington, and William A. Moore by a jury before Judge Gagliardi in the Northern District of New York. All were found guilty of conspiring to possess with intent to distribute in excess of 100 kilograms of marijuana. *See* 21 U.S.C. §§ 841(a)(1), 846 (1988). Defendants Donahue and Carrington were also convicted of the substantive offense of possession with intent to distribute. 21 U.S.C. § 841(a)(1).

Donahue argues that evidence obtained after the execution of a search warrant at his residence was admitted in violation of the Fourth Amendment because the warrant was not supported by probable cause and because the "good faith" exception to the exclusionary rule does not apply. We disagree. Despite the warrant's technical deficiencies, the officers acted reasonably in relying on the magistrate's finding of probable cause. We reject Donahue's other arguments.

The government cross-appeals Donahue's sentence on the ground that his driving while ability impaired ("DWAI") convictions should have been counted in the determination of his Criminal History Category under Guidelines Section 4A1.2. The government also contests the district court's two-level reduction in Donahue's Base Offense Level pursuant to Guidelines Section 3E1.1(a) for acceptance of responsibility. We vacate and remand the sentence on the first ground.

Carrington and Moore also appeal the district court's determination of the applicable Base Offense Level. We reject their arguments. The government cross-appeals the two-level reduction of Carrington's Base Offense Level for acceptance of responsibility. We reject this argument.

Moore challenges the sentencing court's finding of Career Offender status pursuant to Guidelines Section 4B1.1 because it was predicated on a conviction that fell outside the statutory time frame designated by Guidelines Section 4A1.2. We remand for a finding as to the proper time frame and as to the nature of Moore's sentence for the prior offense.

## BACKGROUND

### A. *The Events Leading to the Arrests*

On June 7, 1989, Sergeant Robert Kroll of the East Greenbush (Rensselaer County), New York police department received a phone call from a narcotics officer in El Paso, Texas. Kroll was informed that a drug surveillance dog at the United Parcel Service ("UPS") El Paso branch had alerted officers to two large packages containing drugs. The packages were addressed to Donahue, who lived in Rensselaer County.

The following morning, police officers went to the UPS office near Albany where drug surveillance dogs again alerted to the packages addressed to Donahue. The officers then obtained a search warrant and opened one of the packages. Inside they found a large cooler stocked with marijuana bricks. The officers planned a controlled delivery of the boxes to Donahue by undercover police officers posing as UPS delivery men.

Meanwhile, Kroll, who appears to have been somewhat innocent of the complexities of Fourth Amendment warrant requirements, had drafted a typewritten application for a search warrant of Donahue's residence. Detective Timothy Murphy, who was more experienced than Kroll in preparing applications for search warrants, sought to provide assistance. He gave Kroll handwritten notes describing the contents of the packages and their approximate weight. Believing that the warrant would be obtained only after the packages were actually delivered, Murphy's notes

stated that the boxes had been delivered and accepted by Donahue.

Unknown to Murphy, Kroll took Murphy's handwritten notes, attached them to the typewritten application, and proceeded to the office of Judge Charles Assini in East Greenbush. Although Kroll had signed the search warrant application, he did not actually appear before Judge Assini and take an oath as to its contents. Instead, he remained in the patrol car to monitor the radio while another East Greenbush police officer, Michael Davidson, brought the application and proposed warrant to the judge. Davidson described the events that led to the investigation, the fact that the dogs had alerted to the packages, and the prospect of a controlled delivery sometime in the future. Judge Assini read the application, asked some questions about the case, and signed the warrant. He did not put Officer Davidson under oath. The warrant permitted a search of Donahue's apartment for the El Paso coolers and records or documents relating to the drug scheme. At the suppression hearing, Judge Assini testified that when he signed the warrant, he was well aware that the packages had not been delivered to Donahue's apartment, despite the statement to the contrary in Murphy's handwritten addendum.

Undercover officers then attempted the controlled delivery at Donahue's apartment, but he was not there. The officers left a UPS notice that the packages could be picked up at its office. Soon thereafter, a man claiming to be Donahue arrived at the UPS office and picked up the drugs. When Kroll learned by radio of the description of the man, he realized that the man was not Donahue. Kroll attempted to follow the car but lost it in a ninety-mile-per-hour chase in heavy traffic.

Several hours later, Kroll executed the search warrant at Donahue's apartment, finding drug records, marijuana, drug paraphernalia, and Donahue, who was arrested.

The UPS packages from El Paso were not found.

While Donahue's apartment was being searched, another officer found the car used in the UPS pick-up and the driver, Scott Rehme. Rehme later agreed to cooperate with the authorities in return for immunity from prosecution. As part of the agreement, Rehme told police about the El Paso–Albany drug connection and provided details regarding past shipments, their recipients, and dates of future shipments. Rehme also agreed to participate in a sting operation and called Moore in Texas to order marijuana to be shipped to Donahue. On June 13, accompanied by police, Rehme picked up a large parcel sent by Moore to Albany. Rehme then made a controlled delivery to Carrington, and Carrington was arrested. Moore was arrested in El Paso.

## B. The Suppression/Franks Hearing

Donahue moved for suppression of the drugs, drug paraphernalia, and drug records found at his residence, arguing that the evidence was admitted in violation of the Fourth Amendment. Judge McAvoy granted Donahue's request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),[1] to test the truthfulness of the information contained in the application for the search warrant. The suppression hearing was before Judge Munson, who denied the motion. *United States v. Moore*, 742 F.Supp. 727 (N.D.N.Y.1990). In doing so, he parsed the warrant into anticipatory and non-anticipatory aspects:

[T]he warrant was anticipatory insofar as it sought to recover the two packages which were to be delivered to the defendant's residence. However, insofar [as] the warrant sought records or documents related to the delivery of the two packages it was not contingent upon the delivery of the packages and was therefore, in that aspect, non-anticipatory.

*Moore*, 742 F.Supp. at 733.

Regarding the two boxes (the "anticipatory aspect" of the warrant), Judge Mun-

---

**1.** In *Franks,* the Supreme Court held that when a defendant makes a substantial preliminary showing that a search warrant application contains an intentional falsehood and that false-

hood is essential to a finding of probable cause, then a hearing shall be granted to test the veracity of the warrant and its underlying affidavits. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

son held that issuance of the warrant violated the Fourth Amendment. He reasoned that the "anticipated probable cause vanished with the car," because, absent delivery of the packages to Donahue's residence, there was no probable cause to search for them there. *Id.* at 736. Judge Munson also held that the warrant's provisions regarding documents or records concerning drug transactions (the "non-anticipatory aspect") violated the Fourth Amendment: "With the description of only one planned delivery of marijuana, the facts contained in the warrant application did not give rise to a fair probability that Donahue's residence would yield records of drug transactions." *Id.* at 737 (citation omitted). Additionally, Judge Munson stated that the warrant in its entirety violated the Fourth Amendment because its contents were not supported by oath or affirmation as the Amendment expressly requires. *Id.* at 735.

However, Judge Munson held that the "good faith" exception to the exclusionary rule applied because "the officers were entitled to rely on Judge Assini's determination that there was probable cause that the records or documents would be located [at Donahue's apartment]." *Id.* at 739. He therefore denied the motion to suppress.

## C. *The Trial and Sentencing*

After a jury trial before Judge Gagliardi, each appellant was found guilty on Count I of the indictment, conspiring to possess with intent to distribute more than 100 kilograms of marijuana. *See* 21 U.S.C. §§ 846 and 841(a)(1). Donahue and Carrington were also found guilty of possession with intent to distribute more than 100 kilograms of marijuana, 21 U.S.C. § 841(a)(1), on Counts III and IV respectively.

Donahue's Base Offense Level was calculated at 26, after a two-level reduction for acceptance of responsibility. Declining to take into account two DWAI convictions, the court placed him in Criminal History Category I and sentenced him to 63 months in prison on each count of the indictment, the sentences to run concurrently.

Judge Gagliardi found that Moore was a Career Offender and determined his Base Offense Level to be 37. Initially he stated that the sentence would be 360 months, a term within the Guidelines range for Career Offenders. Shortly thereafter, however, he decided to depart downward from the Guidelines and rendered a sentence of 15 years. Nevertheless, the reduced sentence exceeds the Guidelines range applicable to those who do not have Career Offender status.

Carrington's Base Offense Level was computed at 28. A two-level upward adjustment due to his managerial role in the criminal activity was offset by a two-level reduction due to his acceptance of responsibility. He was assigned a Criminal History Category of I and sentenced to 78 months in prison.

## DISCUSSION

### A. *The Search of Donahue's Residence*

■ We review the district court's findings of adjudicative fact under the "clearly erroneous" standard. *United States v. Uribe–Velasco,* 930 F.2d 1029 (2d Cir.1991); *United States v. Montilla,* 928 F.2d 583, 588 (2d Cir.1991). Conclusions of mixed fact and law are, however, subject to *de novo* review. *Uribe–Velasco,* 930 F.2d at 1032.

■ Relying primarily upon *United States v. Garcia,* 882 F.2d 699 (2d Cir. 1989), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1990), Donahue argues that the evidence found in his apartment and seized by police officers was improperly admitted. In *Garcia,* authorities uncovered a cocaine-smuggling operation in Panama that used couriers to funnel narcotics through Miami to New York. *Id.* at 700. Two of the couriers were apprehended and agreed to cooperate with federal agents by assisting in a controlled delivery of the drugs to a buyer in New York. Before delivery of the cocaine, the agents obtained a search warrant for the recipient's home which was "contingent upon the delivery of cocaine." *Id.* at 701. In *Garcia,* we upheld the constitutionality

of so-called "anticipatory warrants," where issuance precedes events necessary to a finding of probable cause. We also noted the converse of that ruling and stated, "if those events do not transpire, the warrant is void." *Id.* at 702.

*Garcia* is not dispositive of the instant matter, however. The warrant here was not truly "anticipatory" because an actual delivery was not an element in Judge Assini's determination that probable cause existed for a search of Donahue's residence for drug-related documents or records. Judge Assini testified at the suppression hearing:

> [M]y determination certainly there was more than adequate probable cause here. We had a trace in Texas, we had the fact that when those packages were addressed to Mr. Donahue got to Albany the dogs had again confirmed that, in fact, there was another hit ... [that] one of the packages had actually been opened and that marijuana was found in the package.... [and that] both the articles were addressed to Mr. Donahue.

The warrant signed by Judge Assini was thus not contingent upon the delivery of the El Paso packages to Donahue's residence, and *Garcia* does not apply.

■ Nor is the warrant invalid because of the untrue statement in Murphy's handwritten addendum indicating that the marijuana had been delivered to Donahue. False information voids a warrant only if the information was necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77. In the instant matter, Judge Assini was explicitly informed by Davidson that delivery had not been made. The inaccurate addendum was thus not a basis for his probable cause finding.

■ Because we conclude that the good faith exception applies, we need not address the question of whether Judge Assini had actual probable cause to issue the warrant. Evidence seized pursuant to a warrant is admissible even if the warrant lacks probable cause or is technically deficient if the executing officers relied upon it in "objective good faith." *United States v.*

*Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The test of objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922, n. 23, 104 S.Ct. at 3420, n. 23.

■ The good faith exception has parameters, in particular four circumstances set out in *Leon*, in which it does not apply: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Id.* at 923, 104 S.Ct. at 3420–21.

Neither the first nor second parameters have any application to the instant matter. As noted above, Judge Assini was not misled, and there is nothing in the record remotely suggesting that he "wholly abandoned" his judicial responsibilities in granting the warrant.

Turning to the third parameter, we believe that the underlying application was not "so lacking in indicia of probable cause" that it was unreasonable for the officers to rely upon it. As the district court stated, "the warrant application presented to Judge Assini was not a 'bare bones' affidavit, but rather contained many objective facts including the contents of one of the packages, the packages' weight and the delivery address." *Moore*, 742 F.Supp. at 739. We agree that the officers reasonably relied upon Judge Assini's finding of probable cause.

As the Supreme Court has noted, "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914, 104 S.Ct. at 3416 (citations omitted). Nor are there mechanical criteria for assessing the amount of information necessary for a

probable cause finding: "In dealing with probable cause ... as the very name implies, we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

Applying these standards, we conclude that there were sufficient indicia of probable cause to justify reliance by the officers upon the warrant. The dispositive question is not whether the marijuana shipped by UPS was likely to be at Donahue's apartment at the time Judge Assini signed the warrant. As the district court noted, the search will survive the *Leon* test if the UPS shipment reasonably permitted the officers to rely upon Judge Assini's finding of probable cause that documents or records of drug trafficking were in the apartment. We believe that it did. The size of the shipment alone compellingly indicated that the intended recipient was a drug dealer. Dealers need to keep records. The address of the shipment and the need for a signature by the recipient strongly suggested that the apartment was used at the very least as a collection and redistribution point. It was, therefore, a likely repository of drug records.

The belief that drug records may be found at an address to which large packages of drugs are sent is precisely the kind of "practical, common-sense" judgment required by *Gates*. Indeed, we have found probable cause in similar circumstances. In *United States v. Travisano*, 724 F.2d 341, 346 (2d Cir.1983), for example, we upheld a warrant authorizing the search of a residence for stolen goods, where the principal connection between the goods and the residence was a suspected getaway car parked in front of the house. Similarly, we believe that evidence that an apartment is the delivery point for dealer-size quantities of narcotics may reasonably be perceived by officers executing a warrant as supporting an inference that drug records may be found in the apartment. ·

As the Supreme Court has stated:

It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*Leon*, 468 U.S. at 921, 104 S.Ct. at 3419.

▄ Nor does the fourth parameter undermine the application of the good faith exception because, as the district court held, the lack of an oath or affirmation by the presenting officer did not destroy the warrant's facial validity. *Moore*, 742 F.Supp. at 738 (citing *U.S. v. Matias*, 836 F.2d 744 (2d Cir.1988)). In *Matias*, we reviewed a telephone warrant which had been granted by a magistrate despite the absence of an oath by the affiant. We held that the failure to put the agent under oath was an obvious oversight and, therefore, the agent reasonably relied on a facially valid warrant. *Matias*, 836 F.2d at 747. Here we find no reason to upset the district court's finding that Judge Assini's failure to require an oath or affirmation was also an oversight that did not preclude application of the good faith exception.

## B. *Sentencing Issues*

### ˙ 1. *Donahue*

Donahue appeals from the application of the enhanced sentencing provisions of 21 U.S.C. § 841(b). Section 841(b)(1)(B)(vii) states that when a defendant is convicted under Section 841(a) and the quantity of marijuana involved is 100 kilograms or more, "such person shall be sentenced to a term of imprisonment which may not be less than 5 years or more than 40 years."

There was no specific jury finding as to the 100-kilogram amount, and Donahue contends that without such a specific jury finding, the court may not apply the enhanced sentencing provisions of Section

841(b). Donahue also contends that there was as a matter of law insufficient evidence that he dealt in quantities of marijuana exceeding 100 kilograms. We disagree with both arguments.

■ The district court, rather than the jury, must determine pursuant to Guidelines Section 2D1.4 the quantities involved in narcotics offenses for the purpose of Section 841(b). As we stated in *United States v. Madkour*, 930 F.2d 234 (2d Cir. 1991), "quantity relates solely to sentencing. And at sentencing the district court is not limited to conclusions reached by the jury or even evidence presented at trial, but instead may consider any evidence that it deems appropriate." *Id.* at 237. The lack of a specific finding by the jury as to the quantities involved is therefore irrelevant.

■ Donahue's sufficiency claim is totally meritless. At sentencing, the amount of a controlled substance need be proven only by a preponderance of the evidence, *United States v. Pirre*, 927 F.2d 694 (2d Cir.1991), and the district court's assessment of the quantity of drugs is subject only to a "clearly erroneous" standard of review. *United States v. Charria*, 919 F.2d 842, 849 (2d Cir.1990); Fed.R.Civ.P. 52(a) ("Findings of fact ... shall not be set aside unless clearly erroneous."). Rehme's testimony as to more than a dozen UPS shipments, the amount of marijuana found at Donahue's residence, and the amount in the UPS packages were ample proof of dealing in excess of 100 kilograms.

■ The government cross-appeals from the district court's two-level reduction of Donahue's Base Offense Level for acceptance of responsibility pursuant to Guidelines Section 3E1.1(a). We agree with the district court. Although Donahue decided to go to trial rather than plead guilty, he cooperated with authorities upon his arrest by giving an immediate statement of what he maintained to be his involvement in the drug activity. The district court found sufficient acceptance of responsibility from this fact and from the fact that Donahue had "confessed [his involvement] to one and all [of his family and friends]." Although some sentencing judges might require a greater showing of contrition, regret, or repentance, the district court was within its discretion to reduce his Base Offense Level by two.

■ In its cross-appeal, the government also contends that the district court erred in determining Donahue's Criminal History Category. The government argues that the court should have placed Donahue in Criminal History Category II, instead of Category I, based on the presentence report. That report assessed Donahue two criminal history points for two prior DWAI convictions in 1981 and 1984. Whether a conviction for DWAI should be counted for purposes of a defendant's Criminal History Category is a question of law and must be reviewed *de novo*. *See Charria*, 919 F.2d at 849.

Section 4A1.2 of the Guidelines instructs that "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." Section 4A1.2(e)(2). Donahue's DWAI convictions fell within the applicable time period. However, the Guidelines exclude certain misdemeanor convictions from a defendant's criminal history calculus if they are similar to the offenses listed in Section 4A1.2(c)(2). Among the listed offenses are: hitchhiking, vagrancy, loitering and *"minor traffic infractions (e.g., speeding)"* (emphasis added). Application Note 5 to Guidelines Section 4A1.2 states that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." Moreover, an "infraction" is defined in Application Note 1 of Guidelines Section 1B1.9 as "any offense for which the maximum authorized term of imprisonment is not more than five days." When Donahue was convicted of DWAI in 1981, he was subject to a fine of $250 or to a jail term of a maximum of 15 days. New York State Vehicle and Traffic Law § 1192. At the time of his second conviction in 1984, Donahue, as a repeat DWAI offender, was subject to a maximum fine of $500 or 30 days in jail.

New York State Vehicle and Traffic Law § 1192.

Because Donahue's DWAI convictions are not "minor traffic infractions" under the Guidelines, they should have been taken into account in determining Donahue's Criminal History Category. *See also United States v. Kingston,* 922 F.2d 1234, 1239 (6th Cir.1990) (conviction for reckless driving not "minor traffic infraction" under the Guidelines); *United States v. Deigert,* 916 F.2d 916 (4th Cir.1990) (conviction for "driving while impaired" counts toward determining Criminal History Category); *United States v. Aichele,* 912 F.2d 1170 (9th Cir.1990) (conviction for reckless driving to be counted; state law does not determine whether offense is "minor traffic violation" under the Guidelines). We therefore vacate the sentence and remand for resentencing.

■ Although the district court held that Donahue was in Criminal History Category I, it also referred to the "age" of the DWAI offenses and the "circumstances of this case" as mitigating factors. It may be, therefore, that the court believed that Category II overstated Donahue's criminal history. If so, it may, on remand, depart downward under Section 4A1.3 which states: "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history." However, in making such a departure, the sentencing judge must state the "specific reason" for doing so. 18 U.S.C. § 3553(c)(2) (1988). *See United States v. Cervantes,* 878 F.2d 50, 54 (2d Cir.1989).

#### 2. *Moore and Carrington*
##### (a) *Quantity of Narcotics*

Moore and Carrington contest the district court's determination of their Base Offense Levels under Guidelines Section 2D1.1(c)(8) by finding that the conspiracy involved more than 400 kilograms (or approximately 880 pounds) of marijuana. Although each contends that the district court relied only upon the contents of the presentence reports and not on evidence presented at trial, Judge Garliardi stated, "having heard *the testimony and evidence in this case,* I find that there was more than 400 kilograms of marijuana involved in this particular conspiracy." (emphasis added).

This determination of the amount of marijuana involved in the conspiracy is not clearly erroneous. The warrant to search Donahue's apartment describes the two UPS packages from El Paso as weighing 36 and 55 pounds. Moreover, Rehme testified that during a two-year period, drug shipments from Moore in El Paso were sent by UPS to Albany "[i]n excess of a dozen times." Numerous other shipments were delivered by car or truck, with most weighing from 30 to 40 pounds. Although Rehme did not provide weight estimates of the dozen or so UPS deliveries of marijuana, it was logical for the district court to consider the weight of the packages seized on June 8, 1989 as appropriate examples. In sum, because the district court's calculation was not clearly erroneous, we affirm the finding of the 400–kilogram amount.[2]

##### (b) *Carrington's Acceptance of Responsibility*

The government cross-appeals from Carrington's sentence on the ground that a two-level downward adjustment for acceptance of responsibility should not have been granted. Like Donahue, Carrington immediately gave an inculpatory statement upon arrest. Although the government claims

---

**2.** Moore and Carrington claim that they had insufficient opportunity to contest the version of the facts in the presentence report. We disagree. In *United States v. Gelb,* 944 F.2d 52 (2d Cir.1991), we held that "all that is required during sentencing is that 'the defendant have an effective opportunity to rebut allegations likely to affect the sentence.'" *Id.* at 57 (quoting *United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987)). Where a presentence report is mailed several weeks before actual sentencing, defendants have a sufficient opportunity to challenge allegations contained therein. *Id.* The presentence reports were sent to both Moore and Carrington two months before sentencing, and neither requested a sentencing hearing nor proffered evidence contradicting that before the district court.

that the statement minimized his role in the marijuana trafficking scheme, Judge Gagliardi found the statement to be a sufficient acceptance of responsibility. For the reasons stated with regard to Donahue's acceptance of responsibility adjustment, we affirm the district court's application of the Guidelines here.

### (c) *Moore as a Career Offender*

 Believing that nothing in the Guidelines warranted a downward departure, the sentencing court initially imposed on Moore the minimum 30–year sentence mandated by the Guidelines for a Career Offender with a Criminal History Category of VI and Base Offense Level of 37.[3] Moments after imposing the sentence, however, the judge decided to depart downward from the Guidelines and reduced the 30–year sentence to 15 years.[4]

If Moore were not sentenced as a Career Offender, his total offense level would be 30 and his Criminal History Category III, which yields a sentence range under the Guidelines of 121 to 151 months. This is at

least two and one-half years shorter than Moore's 15–year sentence.

Moore argues, therefore, that the sentencing court erroneously found that he was a Career Offender. A Career Offender is defined as one who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Guidelines Section 4B1.1. Whether a prior conviction is counted for the purposes of establishing Career Offender status is determined by the provisions of Section 4A1.2 (Definitions and Instructions for computing Criminal History). Application Note 4, § 4B1.2. The following convictions are counted: (1) a sentence of imprisonment for over one year and one month, imposed within 15 years of the commencement of the instant offense, and (2) any other prior sentence imposed within 10 years of the defendant's commencement of the instant offense. Section 4A1.2(e)(1) and (2).

The issue here turns on a Minnesota conviction dated June 27, 1977. *See supra* Note 3. The parties dispute whether that conviction was within 10 years of the commencement of the present offense, and, if

---

**3.** Some confusion surrounds this issue because of a waiver claim that has become a red herring. At sentencing, Moore objected to the presentence report because it listed a prior conviction at one point as having occurred in 1977 and at another point as having occurred in 1979. The judgment of conviction is in the record and bears the 1977 date. In response to this objection, the sentencing judge ruled that according to 21 U.S.C. § 851(c) and (d), Moore had waived his right to contest the 1979 date because the objection was raised for the first time at sentencing. The 1979 date thus clearly placed the conviction within the statutory ten-year time frame.

Section 851(a)(1) requires that the government file an information with the court to establish a record of prior convictions if it seeks increased sentencing from what is statutorily proscribed. Section 851(c) states that if a defendant "denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information." If a defendant fails to respond to the information in writing, the objection is deemed waived and the court must proceed to sentencing. 21 U.S.C. § 851(d). However, as the government brought to our attention on appeal in *United States v. Whitaker,* 938 F.2d 1551 (2d Cir.1991), we held that Section 851(c) does not require the government to file an information in instances where increased

sentencing is sought under the Guidelines Section 4B1.1 Career Offender provision. *Id.* at 1552. The converse of this holding is that an obligation on Moore to file a written objection was not triggered.

In any event, the presentence report uses the 1977 date as well as 1979. Moreover, the government appears to concede that the correct date of the prior conviction is 1977 and that the reference to 1979 is a typo. Waiver or no, treating the conviction as dated 1979 would, therefore, be plain error. Nevertheless, the government churlishly continued to press the waiver argument in its brief on appeal.

**4.** In reducing the sentence, the judge briefly noted that he had heard cases involving tens of thousands of pounds of marijuana where the sentences were not as severe as thirty years and that "this case is of no comparison with them." This rationale does not justify a decision to depart from the Section 4B1.1 Career Offender provision of the Guidelines. As we noted in *United States v. Richardson,* 923 F.2d 13, 17 (2d Cir.1991), "[t]o allow a departure based on [a] small quantity would undermine the intent of the provision, that is, to punish felony recidivists." *See also United States v. Reina,* 905 F.2d 638, 640 (2d Cir.1990) ("Downward departure cannot be fashioned because penalties for cocaine base offenses are more severe than those involving cocaine.").

not, whether it involved a sentence of over one year and one month. These issues were never resolved because the district judge erroneously believed that Moore had waived his objection to a prior conviction date of 1979. *See supra* Note 3. We remand to the district court to resolve these issues.

The indictment alleged that Moore's involvement in the drug conspiracy began on or about November 1, 1987. The government argues, however, that Moore's involvement in the conspiracy began early in 1987 and thus that the 1977 conviction falls within the 10-year time period designated by Section 4A1.2(e)(2). We leave the issue to be resolved on remand.

If the Minnesota conviction was over 10 years prior to the instant offense, the length of imprisonment served governs whether the conviction should be counted for purposes of computing Moore's criminal history. Section 4A1.2(e)(1). Application Note 2 to Section 4A1.2 states that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." Moreover, "[i]f a part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." Section 4A1.2(b)(2). While Moore was sentenced to three years imprisonment for the 1977 conviction, the government and Moore dispute whether the sentence was stayed and he was placed on probation, spending only the first year of probation in jail. This too shall be resolved on remand, if necessary.

## CONCLUSION

We affirm Donahue's conviction. We vacate his sentence and remand for resentencing under Guidelines Criminal History Category II. We affirm the convictions of Carrington and Moore. We affirm Carrington's sentence. We vacate Moore's sentence and remand for resentencing after his status as a Career Offender has been clarified.