# UNITED STATES of America

### v.

## Caroline EKWUNOH, Defendant.

## No. CR 91–684.

United States District Court,
E.D. New York.

Jan. 14, 1993.

Mary Jo White, U.S. Atty. by Ilene Jaroslaw, Brooklyn, NY, for the Government.

David Wikstrom, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

## TABLE OF CONTENTS

I. FACTS ................................................................. 171
II. LAW .................................................................. 172
    A. The Statute ...................................................... 172
    B. Division of Responsibility Between Judge and Jury ..................... 172
    C. Present Practice .................................................. 173
    D. The Rules ....................................................... 174
    E. Unity of Guidelines and § 841 Rules ................................. 175
    F. General Principles Supporting the Rules .............................. 175
        1. Conspiracy Theory ............................................ 175
        2. Erosion of Constitutional Protections in Sentencing ................ 176
        3. Mens Rea ..................................................... 177
        4. A Hypothetical Case .......................................... 178
    G. Additional Considerations .......................................... 178
        1. Relation Between Conspiracy in Substance and Sentencing ......... 178
        2. Burden on Government ......................................... 178
        3. Manipulation of Amount by Government .......................... 179
III. APPLICATION OF LAW TO FACT ...................................... 179
IV. CONCLUSION ........................................................ 180

Defendant pled guilty to possession with intent to distribute heroin. 21 U.S.C. § 841. Because she neither knew nor could reasonably have foreseen that the transaction for which she was prosecuted would involve one kilogram of heroin, she cannot receive the mandatory minimum sentence of ten years imprisonment that the government argues is required by statute and invariable practice. 21 U.S.C. § 841(b)(1)(A)(i). She must, however, receive a mandatory minimum term of five years despite her cooperation.

■ The government is correct that there is at present a uniform practice in the courts of the Second Circuit of applying an objective rather than a subjective test of quantity of drugs possessed. Real intent is ignored and it is assumed that the amount and kind of drugs actually possessed is congruent with the amount intended to be possessed. Such a rule ignoring *mens rea* when state of mind is contested is of doubtful constitutionality and was not intended by Congress. Acquiescence in an invalid rule of law does not make it valid. *See Brown v. Board of Educ.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), *overruling Plessy v. Ferguson,* 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896).

## I. FACTS

Defendant Caroline Ekwunoh is 28 years old with one year of college. She has custody of her three children, seven, six and five years of age, by her spouse from whom she is separated. She has always been fully employed; since 1991 she has owned and operated a successful clothing and jewelry boutique in Brooklyn. Her boyfriend is a drug smuggler.

In June 1991 a confidential informant controlled by the Drug Enforcement Administration (DEA) arrived at Kennedy Airport from Nigeria carrying an attache case containing 1.013 kilograms of heroin. He was met by defendant. She accompanied the informant to the parking lot where she took the case and placed it in the trunk of a vehicle. She was then arrested.

Defendant was charged with conspiracy and with possessing heroin with intent to distribute. 21 U.S.C. § 841(a). In September 1991 she pled guilty to a single count charging that she "did knowingly and intentionally possess with intent to distribute an amount in excess of one kilogram of a substance containing heroin" in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A)(i). She signed a plea agreement providing that she would cooperate in the investigation and prosecution of narcotics and other offenses.

At the time it accepted defendant's plea of guilty, the court explained to her that an offense involving one kilogram or more of heroin carries a mandatory sentence of at least ten years in prison. The government indicated that it anticipated writing a letter on her behalf, pursuant to 18 U.S.C. § 3553(e) and Guidelines § 5K1.1, recommending to the court that it depart downward from the statutory minimum on the basis of her cooperation. Defendant was warned, however, that neither the court nor the government guaranteed that such a letter would be issued.

When it came time for defendant to be sentenced, the government did not write a letter to the court on her behalf. It found her cooperation unsatisfactory. Defendant claimed that the government's decision not to write a letter was made in bad faith and requested a hearing.

At a *Fatico* hearing the court heard testimony from defendant, the DEA agent responsible for supervising her and a state police investigator. The testimony established that, while defendant was helpful on some matters, transactions that defendant told the government she would arrange sometimes did not materialize; defendant left the jurisdiction in violation of her cooperation agreement, travelling to Florida to purchase a home; she made a substantial downpayment on that home and purchased a $7700 automobile; and she concealed and retained $40,000 at the time her application for bail was granted and she posted $50,-000 in cash.

Defendant also contended at the *Fatico* hearing that she neither had actual knowledge of the amount of heroin in the attache case nor could she reasonably have foreseen that the amount would be in excess of 400 grams. She testified that her boyfriend had called her from Nigeria and told her to meet a person coming off the plane, give him $2000 and drive him to New Jersey; she was familiar with her boyfriend's drug importation activities and she assumed that person (the informant) would be carrying heroin; and she did not know how much heroin he would have. She said she believed the amount would be about 400 grams because she knew her boyfriend had once brought in that amount; she had seen him weigh 400 grams of heroin he had smuggled in previously.

## II. LAW

### A. *The Statute*

The law defendant pled guilty to violating states that

> it shall be unlawful for any person knowingly and intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 841(a)(1). Subsection (b) of 21 U.S.C. § 841 sets out certain penalties specific to this crime. A violation of subsection (a) involving "1 kilogram or more of a mixture or substance containing a detectable amount of heroin" carries a sentence of "a term of imprisonment which may not be less than ten years or more than life." 21 U.S.C. § 841(b)(1)(A)(i). A violation of subsection (a) involving "100 grams or more of a mixture or substance containing a detectable amount of heroin" carries a sentence of "a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(i).

### B. *Division of Responsibility Between Judge and Jury*

Subsection (b) of 21 U.S.C. § 841 is relevant only at sentencing. The Court of Appeals for the Second Circuit has explained,

> Section 841(a) of Title 21 prohibits distribution of *any* [emphasis in original] amount of [heroin] and in no way requires proof of a particular quantity of narcotics as an element of the [offense]. When an indictment does allege that a particular quantity is involved, the effect is only to put the defendant on notice that the enhanced penalty provisions of Section 841(b) *may* apply [emphasis supplied]. Because the quantity is relevant only to enhancement of the sentence, the government is not required to prove the quantity alleged....

*United States v. Campuzano*, 905 F.2d 677, 679 (2d Cir.), *cert. denied*, 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990); *see also United States v. Sotelo–Rivera*, 931 F.2d 1317, 1319 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1186, 117 L.Ed.2d 428 (1992) (quantity is not an element of the substantive § 841(a) offense but is relevant at sentencing under § 841(b)); *United States v. Cross*, 916 F.2d 622, 623 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1331, 113 L.Ed.2d 263 (1991) (same); *United States v. Wood*, 834 F.2d 1382, 1388 (8th Cir.1987) (same).

■ The amount of the drugs is not, the cases hold, an essential element of the offense of possession with intent to distribute and the issue does not go to the jury. *See United States v. Moore*, 968 F.2d 216, 224 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992) (lack of specific finding by jury of quantity involved is irrelevant since quantity is solely for sentencing judge).

■ Because quantity is not an essential element of the § 841(a) offense, a defendant does not plead to a quantity of drugs when he or she pleads guilty to violating that statute. *See Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987) ("It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge...."); *LaMagna v. United States*, 646 F.2d 775, 778 (2d Cir.1981) (same); *cf.* Michael & Adler, *The Nature of Judicial Proof* (1931) (discussing material propositions, sometimes referred to as operative facts, as distinguished from evidence); Michael & Adler, *The Trial of an Issue of Fact*, 34 Colum.L.Rev. 1224 (1934)

(same). As Judge Stanley H. Fuld—the great criminal law expert, previously head of the Appeals Bureau of the New York County District Attorney's Office under Thomas E. Dewey and later Chief Judge of the New York Court of Appeals—pointed out in *People v. Olah*, 300 N.Y. 96, 98–100, 89 N.E.2d 329 (1949):

> Since an indictment not infrequently contains immaterial and nonessential recitals, we cannot determine the 'crime' with which a defendant is charged and, of course, of which he is convicted by mere examination of the indictment's allegations. To ascertain that 'crime', we must of necessity consider the statute which created and defined it and upon which the indictment was based. . . .
>
> It is the statute upon which the indictment was drawn that necessarily defines and measures the crime. There is a difference between the 'crime' of which a defendant was convicted and the 'evidence' relied upon to establish that crime. And, by the same token, there is a difference between the 'crime' of which he was convicted and the 'act' which he may have committed. In other words, the crime, i.e., the operative facts which constitute the criminal offense as defined by the statute, cannot be extended or enlarged by allegations in the indictment or by evidence at the trial. Expressed somewhat differently, facts not specified in the statute upon which the indictment is based may not be rendered material or operative by merely stating them in the indictment. . . .
>
> The 'crime' of which a defendant is convicted remains the same whether a trial was had or a plea of guilty was entered. A plea simply avoids the necessity and expense of a trial, and a defendant is not to be prejudiced, is not to be placed in a different or worse position, by entering a guilty plea.

While the statute here contains references to amounts of drugs, the courts have interpreted the applicable provisions, in effect, to eliminate as surplusage from both statute and indictments references to specific drug quantities.

██ Regardless of whether the defendant pleads guilty or is convicted by a jury, the sentencing judge must find the quantity of drugs involved in order to determine applicability of the mandatory minimum term of imprisonment provided for in § 841(b). *See United States v. Moore*, 968 F.2d 216, 224 (2d Cir.), *cert. denied*, ── U.S. ──, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992) (quantity need be proven only by a preponderance of the evidence at sentencing); *United States v. Madkour*, 930 F.2d 234, 237 (2d Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991) (under § 841 quantity relates solely to sentencing and district court may consider any evidence it deems appropriate); *United States v. Chevalier*, 776 F.Supp. 853, 860 (D.Vt.1991) (relevant facts listed in § 841(b) bear only on sentencing and need be proven only by a preponderance of the evidence).

## C. *Present Practice*

Drug quantities are used to calculate a defendant's offense level under the Sentencing Guidelines as well as under mandatory minimum provisions. *See* Guidelines § 2D1.1(c) (drug quantity table). The Guidelines direct the sentencing judge to attribute to the defendant all *"reasonably foreseeable acts* and omissions of others in furtherance of . . . jointly undertaken criminal activity"* and, in the case of offenses such as this one, "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." Guidelines §§ 1B1.3(a)(1)(B), 1B1.3(a)(2) (emphasis supplied).

██ The court of appeals has stated that the Guidelines approach is based upon the basic theory of conspiratorial liability. *United States v. Cardenas*, 917 F.2d 683, 686–87 (2d Cir.1990). A defendant is responsible for the reasonably foreseeable acts of co-conspirators committed in furtherance of a conspiracy of which he or she is a member. *United States v. Joyner*, 924 F.2d 454, 458 (2d Cir.1991) (citing *Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)). In applying the Guidelines' drug quantity provisions, the sentencing judge must charge the defendant with the entire amount of drugs involved in a conspiracy if

the judge is persuaded by a preponderance of the evidence that the quantity was reasonably foreseeable by the defendant and the defendant was a participant in the conspiracy. *United States v. Perrone,* 936 F.2d 1403, 1416 (2d Cir.), *clarified on reh'g,* 949 F.2d 36 (1991); *Cardenas,* 917 F.2d at 687; *United States v. Schaper,* 903 F.2d 891, 898 (2d Cir.1990); *United States v. Bedoya,* 878 F.2d 73, 75–76 (2d Cir.1989).

Under the Guidelines it is not clear whether "reasonably foreseeable" implies (a) an objective test of what abstract reasonable persons would foresee (in practice what was actually possessed), (b) a subjective test of what the defendant intended or foresaw, (c) a combination of the two that would require that both (a) and (b) be complied with (leading to the lesser of (a) and (b)), or (d) a requirement that either (a) or (b) suffices (leading to the greater of (a) and (b)). In practice our courts seem to have applied (a). For the reasons indicated below, in cases such as the instant one the proper rule is a form of (c) combined with a wilful blindness test.

### D. *The Rules*

Set out below is a statement of appropriate rules that combine both the practical needs in prosecution of these cases and the protections embodied in our criminal law. The reason for describing how such rules would apply under circumstances different from those in the instant case is to demonstrate that the traditional protections of the criminal law are not inconsistent with the needs of practical administration. Any appropriate rule for controlling criminal conduct must be both just and capable of application in our courts. Since there has been so little theoretical discussion of the problem addressed in this memorandum, a broader explication than would normally be warranted in a simple possession case is required. The courts must grapple with this problem of attribution of quantities faced by the judges in the Eastern District of New York hundreds of times each year. (The United States Probation Department estimates that over one half of the 1384 criminal cases filed in the Eastern District in 1992—many of which involved multiple defendants—involved drug offenses).

In a possession with intent to distribute case:

(1) If the person is a minor participant the quantity of drugs attributable is the lesser of what was in fact possessed and what was believed by the defendant to be possessed. If the defendant was wilfully blind to what a reasonable person in such circumstances would have believed, (2) applies.

(2) If the defendant had no limiting belief, but was prepared to possess whatever was in fact possessed, the amount attributable is the amount in fact possessed.

(3) If the defendant is a central or directing figure in the conspiracy, the amount attributable is generally the amount in fact possessed.

The rule will need to be stated differently for the inchoate crimes of attempt and conspiracy. For the actual crime of possession with intent to distribute the amount in fact possessed sets a top limit of attribution. For example, one may intend to possess a kilogram, but if the amount possessed is less than a kilogram, the crime is possession of less than a kilogram. Similarly, one may shoot intending to kill, but if the person does not die, the crime is not murder. The reason for subdivision (1) being further limited by belief is described below in the discussion of general principles. Where there is wilful blindness in (1), a more theoretically correct rule would be: "the lesser amount of what was actually possessed and what a reasonable person would have believed was possessed." In practice, however, the wilful blindness cases seem invariably to involve defendants who have no limiting intent. They can thus be treated as if they fell within subdivision (2). Subdivision (3) is required because the central figures in a conspiracy can rightly be held responsible for all underlings' actions. The word "generally" is added because there may be episodes of an underling going off on capers of his or her own or wholly unexpected results where such a broad rule of attribution would be unjust.

### E. *Unity of Guidelines and § 841 Rules*

Whether the Guidelines' foreseeability approach to drug quantity should be utilized with respect to § 841(b) has not been resolved in a formal discussion of the question by the courts. On the one hand, § 841(b)'s relevance to sentencing and its reliance on drug quantities to determine applicable minimum sentences indicate that it should be applied in the same manner as the drug quantity provisions of the Guidelines. In addition, the routine practice of sentencing judges would appear to be to utilize the same approach to drug quantity whether applying the Guidelines or the statute.

On the other hand, the sentencing judge's determination under § 841(b) is a matter of statutory law, not Guidelines application. The consequences of the judge's quantity calculation are more serious under the statute than under the Guidelines.

Charging a defendant with large amounts involved in a conspiracy can result in an offense level under the Guidelines yielding a probable sentence in excess of or below the corresponding statutory minimum under § 841(b). Guideline §§ 2D1.1(c)(6) and 5A, for example, would provide for a sentence of 121 to 151 months for an offense involving between one and three kilograms of heroin, assuming the defendant had no criminal history, while the statutory minimum would be 120 months. Under the Guidelines, however, a variety of factors, such as the defendant's relatively minor role in the offense or the defendant's acceptance of responsibility, can mitigate the offense level. *See, e.g.,* Guideline §§ 3B1.2, 3E1.1. In addition, the sentencing judge has authority to impose a lesser sentence when circumstances warrant a downward departure. *See, e.g.,* 18 U.S.C. § 3553(b); *United States v. Concepcion,* 795 F.Supp. 1262, 1275–81 (E.D.N.Y. 1992). By contrast, minimum sentences such as those contained in § 841(b) constitute binding expressions of congressional authority that a district judge has no power to mitigate absent a letter from the prosecution.

The rules set out above are more obviously applicable to § 841(b) minima than to the Guidelines. Yet, for reasons of both principle and ease of application, they should be applied under both the Guidelines and § 841(b).

### F. *General Principles Supporting the Rules*

#### 1. Conspiracy Theory

A conspiracy analysis is usually depended upon in applying the foreseeability approach. If the defendant is a central member of the conspiracy it is more justifiable to charge him or her with all the acts of all conspirators than if he or she is a peripheral or minor member. *Cf.* Guidelines §§ 3B1.2, 3E1.1 (reductions for minimal participation and acceptance of responsibility). Those persons leading the conspiracy can be expected to know, control and be responsible for the actions of other conspirators. It would, however, often be erroneous and unfair to apply such expectations to an outlying or peripheral member of an illegal arrangement.

The law of conspiracy has tended to acknowledge this distinction by refusing to find single conspiracies unless peripheral participants can be said to have known of the full scope of the agreement. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 755, 66 S.Ct. 1239, 1243, 90 L.Ed. 1557 (1946) (various defendants who obtained fraudulent housing loans through single source each conspired separately with common source, not with each other as part of single overall conspiracy, since defendants had no interest in each other's fraud, even though they knew common source dealt with others); *United States v. Bruno,* 105 F.2d 921, 922–23 (2d Cir.), *rev'd on other grounds,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939) (in narcotics operation involving smugglers, conduits and retailers, smugglers and retailers were part of same conspiracy, even though they did not know of each other, because each group knew the other was a necessary component of the arrangement); *United States v. Peoni,* 100 F.2d 401, 402–03 (2d Cir.1938) (where A sold counterfeit bills to B who sold them to

C, A and C did not conspire since it was of no consequence to A what B did with the bills after a sale); *see also* Note, *Federal Treatment of Multiple Conspiracies,* 57 Colum.L.Rev. 387, 388–89 (1957) (in a "wheel" conspiracy each spoke "is generally not held to have conspired with other spokes unless it can be inferred that their existence was known to him").

Learned Hand, who once described conspiracy as "that darling of the modern prosecutor's nursery," *Harrison v. United States,* 7 F.2d 259, 263 (2d Cir.1925), recognized the need to be careful in applying theories of conspiratorial liability:

> At times it seemed to be supposed that, once some kind of criminal concert is established, all parties are liable for everything anyone of the original participants does, and even for what those do who join later. Nothing could be more untrue. Nobody is liable in conspiracy except for the fair import of the concerted purpose or agreement *as he understands it . . . .*

*United States v. Peoni,* 100 F.2d 401, 403 (2d Cir.1938) (emphasis supplied); *see also Krulewitch v. United States,* 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790 (1949) (Jackson, J., concurring) ("[T]he looseness and pliability of [conspiracy] doctrine present inherent dangers which should be in the background of judicial thought whenever it is sought to extend the doctrine to meet the exigencies of a particular case.").

### 2. Erosion of Constitutional Protections in Sentencing

Legislatures have broad authority to determine factors relevant to sentencing, including some that ordinarily would be considered elements of the underlying substantive offense. *See McMillan v. Pennsylvania,* 477 U.S. 79, 85–91, 106 S.Ct. 2411, 2415–18, 91 L.Ed.2d 67 (1986) (mandatory minimum sentence of five years imprisonment if judge finds by preponderance of the evidence that defendant "visibly possessed a firearm" during the commission of an offense does not violate due process clause). Yet, as the steady creep of heavy mandatory minimum sentences for narcotics, weapons and other offenses, sentencing guidelines and other harsh legislative sentencing schemes edges forward, at some point sentencing can overrun basic substantive criminal liability theory. That theory underlies and protects constitutional due process.

Failure to place sentencing in the proper theoretical context of the overall criminal law can lead to intolerable results. In *United States v. Concepcion,* 983 F.2d 369 (2d Cir.1992), for example, a defendant who had been convicted of two firearm counts had his sentence calculated according to a Guidelines range of 210 to 262 months, due to the operation of the Guidelines provision governing other offenses committed with the same firearm, Guidelines § 2K2.1(c), even though the jury had acquitted him of using the firearm in connection with the other criminal conduct. The result was the addition of 21 years to the defendant's sentence for conduct that was the basis of a charge of which the jury had acquitted him. The court of appeals, noting that the district judge had applied the Guidelines correctly, remanded for consideration of a downward departure. Judge Newman described the operation of the Guidelines in *Concepcion* as "bizarre" and "astonishing" and complained that "[w]hen the Guidelines and the case law implementing them permit such a result, it is high time for both the Commission and the courts to give serious reconsideration to the decisions that underlie this outcome." *Id.* at 394–96 (Newman, J., concurring); *see also United States v. Frias,* 983 F.2d 369 (2d Cir.1993) (Newman, J., dissenting from denial of rehearing in banc) (reiterating objections).

The Supreme Court has repeatedly warned that a legislature—whether state or federal—may not avoid placing upon the jury the task of finding beyond a reasonable doubt central elements of an offense. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see, e.g.,* Ronald J. Allen, *Structuring Jury Decisionmaking in Criminal Cases: A Unified Constitutional Approach to Evidentiary Decisions,* 94 Harv.L.Rev. 321, 367 (1980) ("necessity of giving carefully composed jury

instructions when they affect constitutionally significant factual issues"). Assuming, without deciding, that the issue of quantity can be taken from the jury even though it is critical to punishment, the court may not ignore the central *mens rea* requirement of our constitutional jurisprudence.

### 3. Mens Rea

Perhaps no principle of our criminal law is as well settled and deeply rooted as the general rule that a defendant must have a guilty mind in order to be found criminally liable. *See, e.g., United States v. United States Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978) (intent remains a generally "indispensable" element of a criminal offense); *Ostrosky v. Alaska,* 913 F.2d 590 (9th Cir.1990) ("A 'culpable state of mind' historically has been necessary for criminal conviction."); Model Penal Code § 2.02 (1962) (except for a limited class of strict liability offenses, "a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense"); *id.* § 2.02 commentary (Code states "basic requirement that unless some element of mental culpability is proved with respect to each material element of the offense, no valid criminal conviction may be obtained"); Wayne R. LaFave & Austin W. Scott, *Criminal Law* § 1.2(b) at 8 (2d ed. 1986) ("[A]ction (or non-action) alone without a bad mind cannot be the basis of criminal liability; crime requires some sort of *mens rea.*").

Glanville Williams summarized the theoretical basis for the requirement of *mens rea* as a precondition to punishment:

> It may be said that any theory of criminal punishment leads to a requirement of some kind of *mens rea.* The deterrent theory is workable only if the culprit has knowledge of the legal sanction; and if a man does not foresee the consequences of his act he cannot appreciate that punishment lies in store if he does it. The retributive theory presupposes moral guilt; incapacitation supposes social danger; and the reformation aim is out of

place if the offender's sense of values is not warped.

Glanville Williams, *Criminal Law* 30 (2d ed. 1961); *see also* H.L.A. Hart, *Punishment and Responsibility* 28 (1968) ("It is characteristic of our own and all advanced legal systems that the individual's liability to punishment, at any rate for serious crimes carrying severe penalties, is made by the law to depend, among other things, on certain mental conditions.").

In a system of criminal justice increasingly driven by plea bargaining, for the defendant the sentencing battle usually is the whole war. And, as Glanville Williams reminds us, the rationales for punishment lie at the heart of criminal-law theory. Our bedrock constitutional commitment to proof beyond a reasonable doubt is seriously undermined if the government is permitted, for all practical purposes, to transform a defendant's sentencing into a finding of guilt or innocence of a central part of the crime. While drug quantity may not be in form an essential "element" of the § 841 offense, that factor is nothing less than critical to a defendant in a heroin case who faces a term of imprisonment under the Guidelines ranging from five months to life depending upon the quantity of drugs and the possibility of a mandatory statutory minimum of five or ten years in prison. *See* 21 U.S.C. § 841(b); Guidelines § 2D1.1(c).

The substitution of mandatory sentencing criteria for substantive material propositions—with a lesser burden of proof and fewer constitutional protections such as confrontation rights—threatens to violate foundational precepts of the criminal law. Such a central element is the requirement of a guilty mind. If a narcotics defendant's culpability must turn on the rigid operation of mathematical schemes based upon the objective weight of the drugs, that defendant is at least entitled to hold the government to some burden of proof (or to permit the defendant to assume some burden of proof) regarding the defendant's state of mind with respect to that quantity. Otherwise our system of individualized justice based upon blameworthiness is placed

at risk by the gradual encroachment of a mechanical regulatory system that neither knows nor cares about the critical mental states of those individuals who come before the courts.

■ Certainly we cannot assume that Congress intended such an erosion of a fundamental protection of our Anglo–American system of criminal justice so painstakingly developed since Magna Carta. *Cf.* Magna Carta ¶ 39, *reprinted in* N.J.S.A. Const. at 1 ("No freeman shall be taken or imprisoned, or disseised, or outlawed, or banished, or any ways destroyed, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land."). A finding of *mens rea*, that is to say proof by at least a preponderance of the evidence that defendant reasonably foresaw a certain quantity of drugs being involved in his or her conduct, is essential before that quantity can be used to compute a minimum statutory or Guidelines term of imprisonment. For this case we do not consider a possible alternative procedure shifting the burden on the issue of knowledge of amount to the defendant.

### 4. A Hypothetical Case

A hypothetical case illustrates the bizarre results that could ensue were the government's view to prevail. Assume that A and her friend B are travelling abroad together after having graduated from law school. A must return to this country earlier than B. B says to A, "would you mind taking this bag back; I want to travel light from now on." To A's query "What's in the bag?" B answers, "Some clothing and four five-dollar bags of coke amounting to a few grains in each. When I return, you, I and our pals C and D can get together for a final sniff before we settle down and start to work on Wall Street." The bag is locked and B keeps the key.

In fact there is more than a kilogram of cocaine in the bag. On apprehension at Kennedy Airport, A is properly charged with possession with intent to distribute (to C and D). 21 U.S.C. § 841(a). Her intent related to a small percentage of one gram,

yet the government contends that she should be punished as if she intended to import thousands of times that amount. Her minimum sentence, if the government were right, would be ten years. The response that no United States attorney would take such a position with respect to a recent law school graduate is hardly persuasive. Our constitutional protections cannot depend upon the social status of the defendant or the whims of the executive. Congress could not have intended such a shocking result.

■ Rigid application of an unyielding objective approach to quantity in possession cases would represent poor statutory interpretation and potentially present serious constitutional questions. A defendant's actual, not hypothetical, state of mind must be carefully determined, as a matter of factfinding at sentencing, when applying drug quantity provisions under the Guidelines and statute.

### G. *Additional Considerations*

#### 1. Relation Between Conspiracy in Substance and Sentencing

It might be argued that the result reached here is not consistent with the substantive law of conspiracy as it has developed in the federal courts. Arguably the concept of conspiracy, as a matter of substantive (and evidentiary) law, has been so broadened and loosened that even a peripheral co-conspirator, such as defendant in the instant case, having joined the organization, would be responsible for the entire scope and details of the conspiracy.

Even if this were true, the substantive law of conspiracy does not necessarily control the sentencing decision. In sentencing we are concerned with individual punishment rather than with corporate or group responsibility. *Mens rea*, therefore, is even more critical in sentencing than it is in determining the scope of the substantive crime of conspiracy.

#### 2. Burden on Government

It might also be argued that the burden of proof placed upon the government with respect to the defendant's intent as to amount is too difficult to meet. First, it should be noted that the burden is by a preponderance of the evidence, rather than

by proof beyond a reasonable doubt. Second, judges in the district courts in the Second Circuit have had extensive experience with the nuances of the drug trade. They would probably apply a working assumption that the amount actually possessed was what the defendant intended or knew was possessed. Effectively, and in practice, at a *Fatico* hearing it will be the defendant's responsibility to come forward with credible evidence on the point before the trial judge, hardened by knowledge of people and drugs, will be persuaded that intent or knowledge is different from the physical reality.

### 3. Manipulation of Amount by Government

Finally, while not critical to the instant case, we find somewhat disquieting the DEA's effective control of the sentence because it can determine the amount of heroin turned over to defendant by a confidential informant. Here it was 1.013 kilograms leading, in the government's view, to a minimum sentence of ten years. 21 U.S.C. § 841(b)(1)(A)(i). Had the amount arranged to be carried by the informant been .999 kilograms the sentence would have been a minimum of five years. 21 U.S.C. § 841(b)(1)(B)(i). Had it been .099 kilograms there would be no minimum term. And, had the amount been 3.013 kilograms the Guidelines would have led in the instant case to a range of between five years, ten months and seven years, three months. Guidelines § 2D1.1(c)(5).

The purity can also be manipulated so that a few grams of heroin in three kilograms of quinine, a common cutting agent, might lead to a huge term. *See Chapman v. United States,* — U.S. —, 111 S.Ct. 1919, 1922, 114 L.Ed.2d 524 (1991) (weight of LSD includes weight of carrier medium); Guidelines § 2D1.1 n.* ("Unless otherwise specified, the weight of a controlled substance set forth in the [quantity] table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."). Given this degree of quantity and quality control and the general shift of power from court to prosecutors under guidelines and minimum

sentencing, there would be too many dangers of abuse were *mens rea* eliminated from sentencing considerations.

It should also be noted that a large percentage of the prosecutions in this court involve undercover sales or purchases (referred to with mordant humor as "reverse buys") of narcotics by government agents. In these cases the government largely controls the scope of the deal. By taking advantage of puffery it can inflate a dealer in grams into one in multiple kilos, thus enormously increasing potential prison time. Such factors need not be ignored by a judge in sentencing.

## III. APPLICATION OF LAW TO FACT

■ Defendant did not know that the attache case contained over a kilogram of heroin. Based upon her credible testimony concerning her past experience with her boyfriend's drug operations, she could not have foreseen that the transaction would involve such a large amount.

For purposes of punishment, a statutory distinction properly is drawn between those who are involved in routine "mule" and "swallower" cases involving less than 500 grams and those who import over a kilogram. To maintain the significance of this distinction, the sentencing court must not make the error of imputing large quantities to a defendant on the unrebuttable assumption that because that defendant had been involved with drug transactions in the past the defendant should have foreseen that future transactions might involve larger amounts.

A reasonable person in the position of this defendant, with the knowledge and experience she had as an obedient underling in her boyfriend's operation, would not necessarily have foreseen that the individual at the airport would be carrying over a kilogram of heroin. She had observed a prior transaction involving in the neighborhood of 400 grams and she testified that she believed the amount involved was to be 400 grams. She was entirely credible and candid in her testimony on this and other matters at the *Fatico* hearing. The court fully credits her testimony. It finds that

she believed that she was to assist in smuggling only 400 grams.

Under the proper approach to foreseeability, defendant is not liable for the full amount of the drugs she assisted in importing. Assuming she intended only to possess 400 grams of heroin, the Guidelines offense level would be 28, instead of the 32 applicable for at least one kilogram. *Compare* Guidelines § 2D1.1(c)(8) *with* § 2D1.1.(c)(6). The offense level must be reduced by four since defendant was a minimal participant acting under the domination of her boyfriend. Guidelines § 3B1.2(a); *see also United States v. Gaviria*, 804 F.Supp. 476 (E.D.N.Y.1992) (subservience may provide basis for downward departure). She must also be given a three-point reduction for full acceptance of responsibility and timely providing information concerning her own involvement. Guidelines § 3E1.1(b). This reduces the Guidelines sentence range to 37 to 46 months. The court would, absent the statutory minimum, have imposed a 37–month sentence in view of defendant's responsible care for her children and good work habits.

 With respect to defendant's contention about her cooperation letter, the testimony at the *Fatico* hearing established, by a preponderance of the evidence, that the government did not withhold the letter in bad faith. Given defendant's repeated failure to produce transactions when promised and the government's subsequent discovery that she had departed from the jurisdiction in violation of her cooperation agreement and had concealed and retained substantial cash, the government had a reasonable basis for refusing to recommend a downward departure.

## IV. CONCLUSION

Pursuant to 21 U.S.C. § 841(b)(1)(B)(i), defendant is sentenced to sixty months in prison to be followed by five years supervised release and a $50 assessment. She is fined $50,000, the total amount of her cash bail. The government has taken steps to obtain forfeiture of her house, her remaining cash and her car. She probably will lose custody of her children. *See United*

*States v. Pokuaa*, 782 F.Supp. 747, 748 (E.D.N.Y.1992) (separation from child for two years likely to result in permanent loss of custody under New York law). The punishment seems sufficient to satisfy even the most punitive. Denying defendant the protection of the fundamental *mens rea* requirement in order to add another five years of prison is unwarranted, unnecessary and would be a violation of statutory and constitutional requirements.

SO ORDERED.