UNITED STATES of America,
Plaintiff–Appellee,

v.

Ragheed AKRAWI, Defendant–Appellant.

No. 92–1553.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 12, 1992.

Decided Jan. 7, 1993.

William J. Richards, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Robert M. Morgan (argued and briefed), Detroit, MI, for defendant-appellant.

Before: JONES and RYAN, Circuit Judges; and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant–Appellant Ragheed Akrawi appeals the sentence imposed by the district court. For the reasons stated hereinafter, we affirm.

I.

In April 1990, a grand jury returned an initial indictment against Akrawi, Akrawi's sister Lamia Akrawi Jeberaeel,[1] and Akrawi's girlfriend Janet Maude Smith (collectively referred to as the "Defendants"). In July 1990, a different grand jury returned a superseding indictment against the Defendants. Counts 1 and 2 of the superseding indictment charged the Defendants with structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(c) (1988). Counts 3 through 7 charged Smith with mail fraud, in violation of 18 U.S.C. § 1341 (1988). Count 8 charged the Defendants with conspiracy, in contravention of 18 U.S.C. § 371 (1988). In August 1990, the case was tried to a jury. The evidence at trial showed the following:

1. In 1987, Lamia Akrawi married Majid Sadik and adopted the new surname of Jeberaeel, with Akrawi becoming her middle name.

Between February 1987 and August 1988, the Defendants acquired five vehicles from European Auto Service ("European") in Ferndale, Michigan. The salesman for the first purchase was Dragutin Pernik, European's owner. The salesman for the other four purchases was Floyd Black, European's sales manager. In each purchase, Akrawi would specify the car he wanted, negotiate the price, and then direct European to title the car in the name of his sister or his girlfriend. The facts of each purchase are as follows:

1. February 1987 purchase of 1987 Mercedes–Benz 190 E:

Price—$40,200; name on title—Lamia Akrawi [Jeberaeel];

method of payment—cash, paid by Akrawi.

2. September 1987 purchase of 1987 Corvette:

Price—$32,800; name on title—Janet Smith;

method of payment—paid in full at time of sale by Akrawi and Smith.

3. December 1987 purchase of 1988 Bronco:

Price—$20,300; name on title—Janet Smith;

method of payment—$9000 cash or check down payment, remainder financed.

4. April 1988 purchase of 1988 Mercedes–Benz 560 SL:

Price—$62,800; name on title—Janet Smith;

method of payment—one deposit payment of $9000 in cash received from Akrawi and eight cashier's checks, each between $4000 and $9000, received from either Smith or Akrawi.

5. July 1988 purchase of 1988 Mercedes–Benz 560 SEC:

Price—$70,600; name on title—Lamia Akrawi [Jeberaeel];

method of payment—one deposit payment of $9000 in cash received from Jeberaeel and eight cashier's checks, each between $4000 and $9000, received from either Smith or Akrawi.

Purchases number four and five, the two 1988 Mercedes, formed the basis of the structuring charges. From 1985–88, none of the three defendants reported an income exceeding $6200, with the exception of Jeberaeel in 1988. In 1988, Jeberaeel and her husband filed a joint return reporting an income of $11,000. The parties stipulated that if Smith's parents testified, they would state that she lived with them from 1987–88, that she never discussed the three cars titled in her name, and that they did not know how she could have paid for them.

The jury found Smith and Akrawi guilty of Counts 1, 2, and 8; Smith not guilty of Counts 3 through 7; and Jeberaeel not guilty of Counts 1, 2, and 8.

Akrawi was sentenced pursuant to the United States Sentencing Commission's *Guidelines Manual* (Nov. 1990) [hereinafter U.S.S.G]. At Akrawi's first sentencing in October 1990, the district court adopted the recommendation of the probation department that two enhancement factors applied to Akrawi. First, the court concluded that Akrawi was a leader in the offense, thereby subjecting him to a two-level increase. Second, the court concluded that Akrawi knew that the funds used to structure the transactions were criminally derived, thereby increasing Akrawi's offense level by five. These enhancements, combined with his base offense level of 14, made his offense level 21. With a criminal history category of III, Akrawi's guideline range was forty-six to fifty-seven months. The court sentenced Akrawi to fifty-seven months imprisonment on all three counts, to run concurrently.

Akrawi's criminal history category of III rested, in part, on a 1989 federal conviction for possession of a firearm as a felon. At the time of Akrawi's first sentencing in the instant case, the firearm conviction was on appeal to this Court. In December 1990, three months after his first sentencing in this case, this Court reversed Akrawi's firearm conviction. *United States v. Akrawi*, 920 F.2d 418 (6th Cir.1990).

In Akrawi's first direct appeal to this Court from his structuring conviction, he raised seven issues including three relating

to his sentence. He argued, and the court agreed, that he was entitled to resentencing. *United States v. Akrawi*, 951 F.2d 350 (6th Cir.1992). Akrawi raised certain sentencing issues that this Court chose not to address then and that he raises again in this appeal.

In April 1992, the district court resentenced Akrawi. The court reviewed this Court's decision remanding the case, an updated Presentence Report, and several facts which had changed since the first sentencing. First, the probation department and the court recalculated defendant's criminal history without including his reversed firearm conviction. Following his first sentencing, Akrawi was convicted of another crime, however. He was found guilty in Oakland County, Michigan Circuit Court of conspiracy to possess with intent to deliver over 650 grams of cocaine. In November 1991, he received a mandatory life sentence without parole. Including this cocaine offense in the calculation of Akrawi's criminal history resulted in a criminal history category of III, the same as before.

Second, the enhancement under U.S.S.G. § 2S1.3(b) (1991) for knowledge that the funds used in structuring transactions were criminally derived changed from a five-level increase to a four-level increase. The court gave Akrawi the benefit of that change, which reduced his guideline range from 46–57 months to 41–51 months.

Akrawi objected to the two enhancements of his sentence. In holding that the enhancements were proper, the court stated that it "considered thoroughly the arguments for the four point enhancement, and the two point enhancement at the time of the original sentencing. I have heard nothing today to cause me to change those enhancements...." J.A. at 410.

Although the court rejected Akrawi's objections to the two enhancements, it partially accepted Akrawi's argument for leniency within the applicable guidelines. At the first sentencing, the court had sentenced Akrawi to the top of the applicable 46–57 month guideline range. Akrawi argued at the second sentencing that he should be given credit for the eighteen months he had spent in prison on the firearm charge. The government countered that he served only eleven of the eighteen months, from September 1989 to August 1990, before his conviction on the structuring charges. Accordingly, the court determined that the most "credit" defendant should be given for spending time in prison on his firearm conviction was eleven months. The court concluded: It would appear to me that I must stay within the guidelines but I do think that it would be reasonable to give him some credit for those 11 months. The way I propose to do it is to take 11 months off the original 57 months which brings us to 46 months, which is middle point of the guidelines presently applicable to him [i.e., 41–51 months]. J.A. at 411.

## II.

■ On appeal, Akrawi argues that the district court erred in finding that Akrawi was a "leader" within the meaning of § 3B1.1(c) such that it could enhance its sentence by two levels. Section 3B1.1(c) states: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) [relating to crimes involving five or more participants], increase by *2* levels." Application Note 3 to this section provides, in part:

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

The factors allowing an enhancement under § 3B1.1(c) must be proven by a preponderance of the evidence. *United States v. Carroll*, 893 F.2d 1502, 1506 (6th Cir.1990).

"The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the

district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1988).

A district court's determination of a defendant's role in the offense under U.S.S.G. § 3B1.1(c) is a factual one which is reviewed under the clearly erroneous standard. *United States v. Williams*, 894 F.2d 208, 213–14 (6th Cir.1990).

In finding that an enhancement under § 3B1.1(c) was proper, the court relied on various evidence including his own recollection of the testimony at trial and the presentence report. The court stated in reply to Akrawi's counsel's argument that there was no evidence in this record that he was a leader, "I think there was adequate evidence of that. I heard the trial, sir. I heard all the testimony. I think there is adequate evidence." J.A. at "389." (follows J.A. at 317). The evidence at trial showed that Akrawi negotiated each purchase and instructed European to put title to each car in the name of either his girlfriend or sister. Moreover, the evidence justified the conclusion that Akrawi supplied the money for the purchase of the cars. The evidence suggested that the money used to buy the cars came from Akrawi's cocaine trafficking. Furthermore, none of the other co-defendants made enough legitimate income to explain the expenditure of over nearly a quarter of a million dollars on five cars during a seventeen-month period.

In addition, the district court adopted the findings of the probation officer. The presentence report indicated that "Ms. Smith, though a willing participant [in the purchase of the two 1988 Mercedes autos], acted under the direction of AKRAWI." J.A. at 44. Based on the foregoing, the court's finding that Akrawi was a leader is not clearly erroneous.

## III.

■ Akrawi next argues that the court erred by finding that he knew or believed that the funds used to structure the purchase of the cashier's checks were from criminally derived property. Akrawi argues that, as a result of that error, the court erred in enhancing his sentence four levels pursuant to U.S.S.G. § 2S1.3(b)(1). Section 2S1.3(b)(1) provides, "If the defendant knew or believed that the funds were criminally derived property, increase by 4 levels." Application Note 1 of this section provides, " 'Criminally derived property' means any property constituting, or derived from, proceeds obtained from a criminal offense."

As with the previous enhancement, the factors allowing an enhancement must be proven by a preponderance of the evidence. *Carroll*, 893 F.2d at 1506. In addition, we review factual findings such as this under the clearly erroneous standard. *See United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991).

In finding that Akrawi knew that the funds were criminally derived property, the district court relied on various pieces of evidence.[2] The court relied on the presentence report which noted the enormous disparity between the income of Akrawi and his co-defendants and the cost of five luxury cars. The presentence report noted that between February 1987 and August 1988, Akrawi and Smith spent nearly a quarter of a million dollars in cash on five automobiles; however, for the years 1986, 1987 and 1988, neither Akrawi nor Smith reported more that $10,000 annual gross income to the Internal Revenue Service. The court also relied on the transcript of Akrawi's detention hearing on the firearm charge, held in September 1989 before a magistrate judge. After the two-day detention hearing, the magistrate judge concluded, ". . . 'Defendant was a member of a large scale [cocaine] distribution network'. . . . Defendant personally was involved with a person with Cuban and Colombian drug ties in a 400 kilogram deal. And on another occa-

---

**2.** Although the district court did not explicitly state what evidence he was relying on at the resentencing, the court noted he "considered thoroughly the arguments for the four point enhancement, and the two point enhancement at the time of the original sentencing. I have heard nothing today to cause me to change those enhancements." J.A. at 410.

sion there was a transfer of $400,000 in a separate deal...." J.A. at 383–84 (citation omitted). Defendant also stated to a DEA undercover agent who was trying to buy cocaine from him, " 'Don't deal with me; I'm too hot, deal with Chachi.' " *Id.* at 384. (citation omitted). Chachi was Andreas Bahoura, another member of Akrawi's cocaine distribution network. *Id.* The court also relied on the affirmance of the detention order by Judge La Plata, and the indictment of Akrawi by the Oakland County Grand Jury for conspiracy to possess with intent to deliver over 650 grams of cocaine, from January 1985 to August 1989.

Based on Akrawi's indictment on cocaine charges in Oakland County (now it is a conviction), the testimony from Akrawi's detention hearing, and the fact that his purchases of the cars greatly exceeded his reported income, the trial court could conclude that Akrawi earned his income from his cocaine activities, and with a motive to conceal that illegal income, he used his cocaine profits to buy the five luxury cars. Thus, it was not clearly erroneous for the court to find that Akrawi knowingly used criminally derived funds to structure the purchases of cashier's checks from the banks.

## IV.

■ Akrawi next argues that the district court erred by not considering mitigating circumstances which were not contemplated by the Sentencing Commission and which justified a departure from the guideline range before imposing his sentence. Akrawi relies on *United States v. Davern*, 937 F.2d 1041, 1048 (6th Cir.1991) (*Davern I*), *vacated*, 970 F.2d 1490 (6th Cir.1992) (*en banc*) (*Davern II*), *petition for cert. filed*, No. 92–6340 (U.S. Oct. 19, 1992). In Davern II, this court, sitting *en banc*, held that it is incorrect, and impossible, to determine whether the Sentencing Commission took into account all of the aggravating and mitigating circumstances of a defendant's case before sentencing that defendant. Therefore, Akrawi's argument is without merit. Furthermore, a defendant has no right to appeal a sentencing court's decision not to depart downward from the guidelines. *United States v. Pickett*, 941 F.2d 411, 417–18 (6th Cir.1991).

## V.

■ Last, Akrawi argues that the district court erred by using the wrong guideline range when it granted him an eleven-month credit for time served on the reversed firearm charge. In granting the credit to Akrawi, the court used the old guideline range of 46–57 months, took the top number in that range (fifty-seven), and subtracted eleven months from fifty-seven so as to end up with a sentence of forty-six, the middle of the new guideline range. Akrawi argues that the district court should have started from the new guideline range of 41–51 months, then subtract eleven months, and presumably end up with a sentence between thirty and forty months.

We find that the district court did not err in sentencing Akrawi to forty-six months of imprisonment. While the district court may have technically erred in formulating his sentence because it used the 46–57 guideline range when it should have used the 41–51 guideline range applicable at the time of resentencing, we find that this is a case of form over substance. The court did state that it would give Akrawi "some" credit for the time served. J.A. at 411. The court never stated that it would give him a full eleven months for the time served. Furthermore, the new sentence did place Akrawi at the middle of the new guideline range; Akrawi was at the upper end of the guideline range as a result of the original sentencing. As a result, we hold that this argument lacks merit.

## VI.

For the foregoing reasons, we AFFIRM.