4 F.3d 994
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald K. HURST, Defendant-Appellant.
 No. 92-2548.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1993.
 
 Before: KENNEDY, RYAN AND KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Donald Keith Hurst (Hurst) appealed from his sentence for multiple counts of mail fraud under 18 U.S.C. Sec. 1341 and aiding and abetting under 18 U.S.C. Sec. 2. On May 21, 1992, a federal grand jury indicted Hurst on 28 counts for alleged participation with other uncharged persons in a scheme calculated to defraud several insurance companies by filing false claims for "reimbursement" of alleged medical bills totalling approximately $150,000.
 
 
 2
 On September 25, 1992, a jury returned a guilty verdict on 27 counts of the indictment. Judgment was entered in accordance with the verdict on December 17, 1992. On that day, a sentence of 48 months was imposed for each count, to be served concurrently, plus three (3) years of supervised release together with a special assessment of $1,350.00.
 
 
 3
 As a result of a sentencing hearing conducted on December 17, 1992, the district court determined that the appropriate base offense level was six (6), which it increased by six (6) additional levels after considering the magnitude of the loss involved, two (2) levels because of harm to multiple victims, two (2) levels for obstruction of justice, and two (2) levels for his leadership or managerial role in the conspiracy. This resulted in a total offense level of 18. The court placed Hurst in criminal history category IV, which mandated an "imprisonment range" of 41 to 51 months.
 
 
 4
 On December 22, 1992, Hurst filed a timely notice of appeal in the district court. Hurst assigned as error the computation of the district court in arriving at an imprisonment range of 41 to 51 months. He challenged the district court's inclusion of a two (2) level enhancement of his base offense level for obstruction of justice, as well as assignment of an additional two (2) level enhancement for his leadership or managerial role in implementing the fraudulent scheme here in controversy, as clear error and a misapplication of the Sentencing Guidelines.
 
 
 5
 Trial of this matter was originally scheduled for July 27, 1992. Prior to trial, the Pretrial Services Agency had notified the trial court by letter that Hurst had tested positive for tuberculosis and had been placed under "complete quarantine" by the City of Detroit Department of Health Tuberculosis Control Program (Program). The letter relied upon documents which Hurst had given to his Pretrial Services Officer ("P.S.O."). One document from the Program listed possible side effects of tuberculosis medication and included the admonition "COMPLETE QUARANTINE" typed across the top of the form. Another document, an appointment/referral form for Hurst from the Program, showed a "POS" result from a skin test purportedly given on June 5, 1992. Hurst also gave his P.S.O. copies of prescriptions from the Program's tuberculosis clinic and an article from a local newspaper which decried the rise of tuberculosis in Michigan.
 
 
 6
 As a result of the provided documents, the court vacated the scheduled trial date. A new trial date was set only after the Pretrial Services Agency advised the court that Hurst had not been diagnosed with tuberculosis and that he altered documents which he had provided to his Pretrial Services Officer.
 
 
 7
 At the sentencing hearing of December 17, 1992, Anita Payne, a nurse of the Program clinic, testified that on June 5, 1992, the day after his arraignment, Hurst appeared at the clinic and asserted that he had tested positive for tuberculosis on a skin test given at the Wayne County Jail. He provided no documentation of this test. The evidence disclosed that subsequently the Probation Department discovered that the Wayne County jail had no record of Hurst being tested for tuberculosis or even being incarcerated during the relevant time period.
 
 
 8
 Nurse Payne testified that Hurst received a chest x-ray, with normal results. However, medication was prescribed in view of his representations that he had a positive skin test. She gave Hurst the form that listed the side effects of the medication, but testified that the words "COMPLETE QUARANTINE" did not appear on it. Indeed, no one had been placed under "quarantine" to her memory since her employment at the clinic in January 1990. Moreover, the term "quarantine" was not used by the clinic. She testified that the clinic's records did not indicate that anyone at the clinic had diagnosed Hurst as having tuberculosis or had advised him that he was tubercular.
 
 
 9
 Nurse Payne testified that she had completed an appointment/referral card for the defendant but that she had not written in the section Hurst referred to which purportedly memorialized a positive skin test. She testified that "POS" is not a correct diagnostic characterization of tuberculosis skin tests, which are routinely reported in millimeters.
 
 
 10
 Upon the evidence developed at the sentencing hearing, the trial judge overruled Hurst's objection to a two (2) level enhancement that resulted from the obstruction of justice charge:
 
 
 11
 I think the two level enhancement is warranted in this case. I think that the only reasonable inference that can be made from the proofs we've heard is that the document was altered; that the words "complete quarantine" were added to the document; and the only reasonable inference is that they were altered by the defendant, or by someone acting at his direction.
 
 
 12
 There's no question but that that held up the trial. I mean, it held it up for a substantial period of time. There was a long period of time we didn't know what we were going to do with this case. And it does seem to me that's a classic obstruction of justice as defined under 3C1.1, presenting a false, altered or counterfeit document during a judicial proceeding.
 
 
 13
 The United States Sentencing Commission Sentencing Guidelines (Nov. 1992), Sec. 3C1.1, provides:
 
 
 14
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 15
 The Application Notes to the Commentary to Sec. 3C1.1, Note 3, provides:
 
 
 16
 The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 (c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;
 
 
 20
 This court agrees with the trial court that Hurst's conduct constituted a classic case of obstruction of justice. The record contains ample evidence from which the inference is compelled that Hurst deliberately falsified documents which he provided to his Pretrial Services Officer with the clear intent of delaying his trial. His fraudulent actions achieved that dilatory effect.
 
 
 21
 In the Sixth Circuit, courts determine the facts relevant to application of the Sentencing Guidelines by the preponderance of the evidence. U.S. v. Carroll, 893 F.2d 1502, 1506 (6th Cir.1990) (expressly rejecting the "clear and convincing evidence" standard); U.S. v. Walton, 908 F.2d 1289, 1301 (6th Cir.1990), cert. den., --- U.S. ----, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). See also U.S. v. Williams, 952 F.2d 1504, 1516 (6th Cir.1991).
 
 
 22
 On appeal, these factual findings (including witness credibility evaluations) are reviewed for clear error, and the court of appeals defers to the district court's application of the Guidelines to the facts. 18 U.S.C. Sec. 3742(e); U.S. v. Eve, 984 F.2d 701, 703 (6th Cir.1993) ("The district court's determination that a defendant has obstructed justice in connection with the offense is a factual determination which this court reviews under the clearly erroneous standard.")
 
 
 23
 Under the applicable "preponderance of the evidence" standard, assessing the weight of the evidence in considering a charge of obstructing justice is a matter within the sound discretion of the trial court, which will be reviewed only for clear error. E.g., U.S. v. Barrett, 890 F.2d 855, 867 (6th Cir.1989) (when reviewing question of fact decided by a district judge regarding sentence enhancement, the court of appeals must give "due regard to the trial court's assessment of the credibility of witnesses.")
 
 
 24
 In this case, a highly credible witness coupled with undisputed documentary evidence supported the district court's finding that Hurst made false representations to the trial court which amounted to an obstruction of justice which conclusions could not be characterized as clearly erroneous. This court agrees with the Eighth Circuit's ruling in Morphew v. U.S., 909 F.2d 1143, 1145-6 (8th Cir.1990) that seeking to delay a trial by false representations about the health of a litigant (in that case, a co-defendant) justifies a two (2) level enhancement for obstruction of justice.
 
 
 25
 For these reasons, the district court did not err in adding a two (2) level enhancement to Hurst's base offense level for obstruction of justice.
 
 
 26
 The evidence at trial disclosed that Hurst purchased a number of health insurance policies in the name of an alias, as well as several additional policies in the actual names of three individuals. Hurst received a number of checks from insurance carriers in satisfaction of fraudulent claims made under those policies. All of the insurance checks issued in payment of false claims filed by Hurst or any of his accomplices ultimately were delivered to Hurst. Hurst's fingerprints and/or handwriting were directly connected with every fraudulent claim at issue in the case.
 
 
 27
 In overruling Hurst's objection to a two (2) level enhancement for his "leadership" role under Sec. 3B1.1(c) at the sentencing hearing, the trial judge stated:
 
 
 28
 Well, again, I agree that the enhancement is warranted here. He doesn't have to be the big boss to get the two level enhancement here. He simply has to be a manager and all the other language. He has to be a manager, supervisor, et cetera, and I think it's quite clear. I mean, it wasn't just a matter of him being in the car when the other fellow picked up the check. He's the one who had the contacts with the body shop. He was the one getting the money. There were a number of other people involved and his fingerprints were on all the--not all, but a great number of the applications that were signed by other people in other peoples names.
 
 
 29
 I think it's quite clear that this defendant had a role that was supervisory in some sense that would justify this two level enhancement.
 
 
 30
 The court therefor imposed a two (2) level enhancement under Guidelines Sec. 3B1.1(c).[1]
 
 
 31
 While culpable, Hurst's accomplices acted in accordance with the instructions given by Hurst and for the primary benefit of Hurst. Hurst used his accomplices as a means of facilitating his criminal scheme and shielding himself from detection. However, Hurst was clearly at the center of the scam. See U.S. v. Akrawi, 982 F.2d 970 (6th Cir.1993) (no error to impose a two (2) level enhancement under Sec. 3B1.1(c) where defendant purchased automobiles in the names of his girlfriend and his sister in order to evade income reporting requirements; defendant himself negotiated each purchase and requested that title be placed in another's name).
 
 
 32
 Although Hurst exploited several accomplices to implement his scheme of perpetrating insurance fraud, only he was involved in each of the fraudulent transactions. He received the cash proceeds of each of the checks. He maintained a low profile while he manipulated others to rent private mail boxes to which insurance checks were delivered for redelivery to him. The finding by the district court that Hurst was a "manager" of the criminal activity under Sec. 3B1.1(c), and consequent imposition of a two (2) level sentence enhancement, was not clear error.
 
 
 33
 Accordingly, the district court's disposition is hereby AFFIRMED.
 
 
 
 [1]
 Sentencing Guidelines Sec. 3B1.1 provides:
 Based on the defendant's role in the offense, increase the offense level as follows:
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in (a) or (b), increase by 2 levels.
 Note 3 of the Application Notes states:
 In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' and 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.