21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lee AUGARTEN, Ronald Terry, Defendants.
 Nos. 93-3483, 93-3525.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1994.
 
 Before: KENNEDY and GUY, Circuit Judges; and FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Lee Augarten and Ronald Terry were arrested on March 10, 1992 and charged with the unlawful possession of marijuana. Several superseding informations were filed. The final information, filed on August 31, 1992, charged Augarten and Terry, together with Kim Evans and Timothy Carroll, with Conspiring to Unlawfully Possess with the Intent to Distribute Marijuana, in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 846. The information charged the group with distributing hundreds of pounds of marijuana a month for over a year. Augarten also was charged with one count of Money Laundering in violation of 18 U.S.C. Sec. 1956(a)(1)(B)(i), a count that stemmed out of his January 1992 purchase of a 1987 Lincoln limousine for $9,000. Both Augarten and Terry pleaded guilty and raise numerous sentencing issues on appeal.
 
 I. Augarten's appeal
 
 2
 Augarten appeared before Hon. James L. Graham, U.S. District Judge for the Southern District of Ohio, on August 30, 1992 and pleaded guilty to both counts of the superseding information. On November 24, 1992, Augarten filed a motion to withdraw his guilty plea. The court denied that motion on January 21, 1993 and sentencing proceedings were held on August 28 and August 29 of 1993. The court categorically denied Augarten's objections to the presentence report, advanced his offense level from 32 to 38, and imposed the maximum sentence of twenty years imprisonment.
 
 
 3
 Augarten raises six points on appeal. First, he claims that the district court abused its discretion when it denied him credit for acceptance of responsibility. Second, he argues that the trial court impermissibly denied him the opportunity to impeach the prosecution's informant during the sentencing hearing. Third, he claims that the court erred when it increased his sentencing level four points for being an organizer or leader in the marijuana distribution conspiracy. Fourth, Augarten claims that the district court erred when it sentenced him to twenty years on the money laundering count. Fifth, Augarten argues that the district court impermissibly permitted the government to renege on collateral plea-bargain promises that it made to the defendant. Finally, Augarten contests the district court's determination of the amount of marijuana which should have been considered as relevant conduct. We find no merit in any of these arguments and affirm the district court's decision in its entirety.
 
 
 4
 A. The sentencing court did not abuse its discretion when it denied Augarten credit for acceptance of responsibility
 
 
 5
 Section 3E1.1 of the United States Sentencing Guidelines permits a two-level sentencing reduction for acceptance of responsibility. The defendant bears the burden of proving that he accepted responsibility by a preponderance of the evidence. United States v. Rodriguez, 896 F.2d 1031, 1031 (6th Cir.1990). A sentencing judge's decision denying a two-level reduction for acceptance of responsibility is "entitled to great deference on review." USSG Sec. 3E1.1, comment. (n. 5), and should not be disturbed unless clearly erroneous, United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989).
 
 
 6
 Augarten argues that several facts show that he accepted responsibility: (1) he admitted his involvement in the crime, (2) he consented to a search of his residence on the day of his arrest, (3) he removed his dogs from the residence to facilitate the search, (4) he opened a floor safe for the law enforcement officers, (5) he showed the officers the location of all firearms, (6) he showed the officers the location of all marijuana, and (7) he showed the officers all cash in his home, some of which was hidden. Augarten claims that the only time he refused to answer questions was during his interview with the probation officer and that he only refused to answer questions at that time on the advice of his attorney and because of threats to his family.
 
 
 7
 Augarten maintains that this post-arrest behavior entitles him to at least a two-point reduction for acceptance of responsibility under United States v. Moore, 968 F.2d 216 (2d Cir.), cert. denied sub nom. Donahue v. United States, 113 S.Ct. 480 (1992). This overstates the holding of Moore, where the U.S. Court of Appeals for the Second Circuit merely upheld a district court's decision to reduce the sentences of two defendants for immediately giving inculpatory statements upon arrest, Moore, 968 F.2d at 224-26, but explicitly acknowledged that the sentencing guidelines did not require the two-point downward departure. The court recognized that "some sentencing judges might require a greater showing of contrition, regret, or repentance, [but] the district court [in Moore ] was within its discretion to reduce [one of the defendant's] Base Offense Level by two." Id. at 224.
 
 
 8
 The government does not dispute that Augarten aided the authorities after his arrest or that these activities ordinarily might amount to acceptance of responsibility. Application note 1(a) permits a reduction for "conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sec. 1B1.3 (Relevant Conduct)." The government nevertheless maintains that the district court's decision to deny the acceptance-of-responsibility reduction was proper because (1) Augarten attempted to minimize the extent of his involvement in the conspiracy, and (2) he attempted to disavow a post-arrest statement.
 
 
 9
 A defendant who admits one act is not entitled to acceptance of responsibility when the admission does not include the defendant's role in the conspiracy. United States v. Nelson, 922 F.2d 311 (6th Cir.1990), cert. denied, 499 U.S. 981 (1991). The United States Sentencing Guidelines state that "[a] defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction...." USSG Sec. 3E1.1, comment. (n. 1(a)). But, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility...." Id. The probation officer in this case advised against a two-point reduction for acceptance of responsibility because Augarten limited his statement about the conspiracy to the activities occurring only on March 10, 1992 (the date he was arrested) and denied his leadership role. The activities on dates other than March 10, 1992 are "relevant conduct"; plenty of evidence showed that Augarten and his co-conspirators had been buying and distributing hundreds of pounds of marijuana a month for well over a year. And, as discussed at length in Part I.C. of this opinion, plenty of evidence shows that Augarten played a leadership role in the conspiracy.
 
 
 10
 Augarten maintains that he failed to provide further information about relevant conduct because he feared for the safety of his family (he claimed he had received threats from his drug sources) and because his lawyer told him to keep silent. This first excuse might have had merit had the sentencing judge's denial of an acceptance-of-responsibility reduction been based on Augarten's refusal to identify his sources. But the excuse fails here because Judge Graham's denial was based on Augarten's denial of his leadership role and his attempts to limit his role in the conspiracy to the shipment of marijuana received on March 10, 1992. Nor do we find merit in Augarten's argument that he minimized his role upon the advice of his lawyer. See United States v. Trujillo, 906 F.2d 1456, 1460-61 (10th Cir.) (rejecting a similar argument), cert. denied, 498 U.S. 962 (1990).
 
 
 11
 Finally, the sentencing court observed at the suppression hearing that Augarten "came close to denying, certainly attempted to create the impression that he was denying that he was explained his constitutional rights on the night of his arrest." The court felt that this testimony "came close to ... perjury" because "the evidence is clear ... that his constitutional rights were read to him, and that he did fully understand them." (Sen.Tr. at 283).
 
 
 12
 The district court was within its discretion to deny the acceptance-of-responsibility reduction both because of Augarten's attempts to minimize his role in the offense and his "near perjury" during the suppression hearing.
 
 
 13
 B. Whether the trial court erred when it denied Augarten's lawyer an opportunity to impeach the prosecutor's informant at the sentencing hearing
 
 
 14
 Clifford Honaker testified at the sentencing hearing to establish Augarten's role in the offense and the specific amounts of marijuana distributed during the course of the conspiracy. Augarten's lawyer attempted to call Wayne Mason as a witness to impeach Honaker's credibility. The court refused to let Mason testify, and Augarten argues that this refusal violates his due process right to confront witnesses and to present witnesses on his own behalf.
 
 
 15
 The sentencing court's refusal to permit Mason's testimony was not an abuse of discretion. The sentencing hearing in this case spanned many hours over the course of two days. Towards the end of the first day, after the parties had presented their witnesses, Augarten's lawyer informed the court that he had additional evidence to present, but no witnesses to call. After he presented this evidence, and then agreed that he had no more evidence to present on behalf of Augarten. (App.Tr. at 355). A short time later, the court permitted Augarten to reopen the testimony phase of the hearing to put Task Force Officer Costello on the witness stand. (App.Tr. at 359). The following morning, however, Augarten's counsel asked the court to present yet another witness: Mason. He claimed that Mason would testify about a threat that Honaker had made against Augarten which, he claimed, would help refute Honaker's credibility.[1] (Sen.Tr. at 249). We are convinced that the district court had given Augarten adequate opportunity to impeach Honaker's credibility. Its refusal to reopen the testimony phase of the sentencing hearing was not an abuse of discretion.[2]
 
 
 16
 C. The sentencing court correctly determined that Augarten was a leader of criminal activity that involved five or more participants
 
 
 17
 The sentencing court meted out a four-point sentencing enhancement for Augarten's role as a organizer or leader of the criminal activity. The court found that
 
 
 18
 Augarten was a leader or organizer in regard to Ronald Terry, Timothy Carroll, Kim Evans, Cliff Honiker [sic], Richard Foster, Jeff Bryant, and other persons employed in the stucco business who also, at defendant's direction, assisted in the marijuana business.
 
 
 19
 (App. at 385). Augarten argues that this determination is unsupported by the record.
 
 Section 3B1.1 states:
 
 20
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 21
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 22
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 
 
 23
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
 
 
 24
 The government was required to establish the relevant factors by a preponderance of the evidence. United States v. Castro, 908 F.2d 85, 90 (6th Cir.1990). The court's determination is a factual one and should not be upset unless clearly erroneous. United States v. Akrawi, 982 F.2d 970, 974 (6th Cir.1993).
 
 
 25
 Augarten's status as a distributer of marijuana, without more, does not establish the propriety of a section 3B1.1(a) enhancement. United States v. Gibson, 985 F.2d 860, 866 (6th Cir.), cert. denied sub nom. Baker v. United States, 113 S.Ct. 2981 (1993). That Augarten controlled the money and the guns, for example, does not alone establish the required control for the purposes of section 3B1.1(a). See United States v. Brown, 944 F.2d 1377, 1381 (7th Cir.1991) (remarking that the government must present some evidence of the defendant's supervisory role).
 
 
 26
 Plenty in the record nevertheless supports the court's finding that Augarten was a leader or organizer of the conspiracy. Augarten was the owner of the legitimate stucco business that gave rise to the illegitimate marijuana business. Cliff Honaker testified that others in the conspiracy were "selling marijuana for Mr. Augarten...." (App. at 149). Honaker also stated that Augarten would "send people to California" to get marijuana, (App. at 165), and that Augarten would front marijuana to his distributors if they did not have enough money, (App. at 166). Further, there was testimony that Augarten weighed the marijuana, at least on some occasions. (App. at 158). He also recruited employees from his legitimate stucco business into "marijuana employees." (App. at 202-03). Honaker also described his own relationship with Augarten: "I kind of rode along with him and watched his back and helped him out, weigh things up and helped him keep track of what was going on." (App. at 244). Finally, over 70 phone calls to the conspiracy's source in California stemmed from various Augarten phone numbers. These facts are all circumstantial evidence of Augarten's leadership role. Given this evidence, it is clear that the district court did not abuse its discretion when it concluded that Augarten was a leader and organizer of the conspiracy.
 
 
 27
 D. Whether the court erred in sentencing Augarten to 240 months on the money laundering count
 
 
 28
 The sentencing court imposed a 240-month prison term on Counts I (the drug distribution conspiracy) and II (money laundering) to be served concurrently. Augarten contends that the court erred when it sentenced him to two sentences of 240 months. He claims he should have received one sentence for the drug offense, a lower sentence for the money laundering offense, and that these two sentences should run concurrently.
 
 
 29
 The sentencing court's calculation is correct. As Augarten admits, the guidelines require the two counts to be "grouped" together for sentencing purposes. USSG Secs. 3D1.1, 3D1.2. The drug distribution conspiracy count then produces the highest offense level and therefore was used to calculate the base-level offense under sections 1B1.1(b) and 3D1.3(b). Section 5G1.2(b) specifically requires that for multiple counts of conviction, "the sentence imposed on each other count shall be the total punishment as determined in accordance with Part D of Chapter Three, and Part C of this Chapter." (emphasis added). As the commentary explains, "[t]his section specifies the procedure for determining the specific sentence to be formally imposed on each count in a multiple-count case. The combined length of the sentences ('total punishment') is determined by the adjusted combined offense level. To the extent possible, the total punishment is to be imposed on each count." USSG Sec. 5G1.2, comment. (emphasis added). See also United States v. Perez, 956 F.2d 1098, 1102-03 (11th Cir.1992) (applying this analysis); United States v. Reed, 1993 U.S.App. LEXIS 32001 (4th Cir.1993) (unpublished opinion) (applying the above analysis and imposing two sixty-month sentences for (1) drug and (2) money laundering). The court correctly imposed a 240-month sentence on the money laundering count.
 
 
 30
 E. Whether the court erred when it allegedly permitted to government to breach its promises to Augarten
 
 
 31
 Augarten claims that he and the government entered into a separate, oral agreement in addition to the written plea agreement under which the government promised (1) not to object to Augarten receiving a two-point reduction for acceptance of responsibility, and (2) not to seek more than a two-point enhancement for Augarten's role in the offense. Augarten's attorney put this alleged understanding on the record during Augarten's change-of-plea hearing. (App. at 59-60). Augarten claims that the government later breached this agreement.
 
 
 32
 There is not merit to this argument. Language in the plea agreement specifically states that no additional oral promises had been made. Further, the colloquy that immediately followed Augarten's lawyer's version of the "understanding" refutes Augarten's claim that he had a separate plea agreement:
 
 
 33
 The Court: All right. Mr. Burns, do you have any comment about those statements by Mr. McNamara?
 
 
 34
 Mr. Burns: No, your Honors, I didn't think they were appropriate to the pleas agreement and I explained that to Mr. McNamara [Augarten's attorney] as it relates to acceptance of responsibility. Since the defendant is not cooperating it would be improper for me to recommend acceptance as he is not cooperating with respect to his role in the offense. After speaking with the agent the two points is what we felt comfortable with, although Mr. McNamara is unable to agree to that, so we will let probation resolve the matter. So essentially there is no agreement as far as the government is concerned.
 
 
 35
 (App. at 61).
 
 
 36
 Augarten then accepted the plea agreement, despite these comments of the Assistant United States Attorney, and even after the court told him that he could receive a four-level enhancement for his role in the offense.
 
 
 37
 F. Whether the district court correctly determined of the amount of marijuana to be considered relevant conduct
 
 
 38
 The court found that 1545 kilograms of marijuana should be considered relevant conduct for sentencing purposes. Augarten contends that the 400-800 kilogram range is more accurate. The district court's determination of the amount of marijuana should not be disturbed unless clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.); cert. denied 498 U.S. 990 (1990). Estimates of relevant conduct are acceptable if supported by a preponderance of the evidence. Walton, 908 F.2d at 1302. The sentencing guidelines specifically state that "where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." USSG Sec. 2D1.1, comment. (n. 12).
 
 
 39
 In this case, the agents arrested Augarten and his coconspirators with 200 pounds of marijuana. There was plenty of evidence showing that marijuana shipments had been arriving periodically for over a year. The court determined the quantity of marijuana by dividing the relevant time frame into two periods. It estimated that during the first period, from January to August 1991, Augarten received 100 pounds of marijuana a month for a total of 800 pounds. (Tr. at 275). During the second time period, September 1991 through February 1992, the court found that Augarten received 400 pounds per month for a total of 2400 pounds. Finally, Augarten received 200 pounds on March 10, 1992. This comes out to an estimated 3400 pounds of marijuana, or 1545 kilograms.
 
 
 40
 The court based its calculation in part on the testimony of the government informant, Augarten's partner Honaker. It found Honaker's testimony credible, but excluded from its calculations amounts that Honaker claimed came from California, presumably because Honaker had no personal knowledge of the amounts contained in these shipments. The court noted, however, that coconspirator Richard Foster's testimony corroborated substantial portions of Honaker's testimony. Special Agent Robert Bogner also testified that there were numerous telephone calls between Augarten and the California drug source. Augarten himself admitted to Agents Bogner and Costello on the night he was arrested that he had been distributing 400 to 500 pounds of marijuana a month. Finally the court found it significant that Augarten made five airplane trips to California during the period of the conspiracy. We find that the district court's estimate of the amount of marijuana involved in the conspiracy was not clearly erroneous.
 
 II. Terry's appeal
 
 41
 Ronald Terry ("Junior") was an employee in Augarten's stucco business, and, it appears, a fairly minor player the marijuana conspiracy. He pleaded guilty and was sentenced to 41 months imprisonment. He appeals two aspects of his sentence. First, he claims that the district court incorrectly determined that he was responsible for 280 pounds of marijuana. He admits that he helped break up the 200-pound shipment that arrived on the day he was arrested, but denies being involved in another 80-pound shipment attributed to him for sentencing purposes. Second, he claims that he should have received an extra, one-point reduction because he accepted responsibility. He received a two-point reduction, but claims that he should have received this extra point under USSG Sec. 3E1.1(b)(2) because he timely notified the authorities of his intention to enter a plea of guilty.
 
 
 42
 A. Whether Terry should be held responsible for 280 pounds of marijuana
 
 
 43
 The extra eighty pounds of marijuana attributed to Terry was brought back from California by Michael Denny on a Greyhound bus in 1991. According to Honaker's testimony, Terry drove with Denny in a van to California but had nothing to do with the shipment:
 
 
 44
 Q. Do you recall how many trips the person you know as Junior [Terry] would have made to California?
 
 
 45
 A. To tell you the truth, I think just one, and he never brought nothing back. He just kind of drove Mike out there.
 
 
 46
 ....
 
 
 47
 (App. at 48).
 
 
 48
 Q. So he was a tourist on that trip, not a marijuana buyer?
 
 
 49
 A. Sightseer. Beat Greyhound bus back driving by himself.
 
 
 50
 Q. So Junior neither bought nor delivered any marijuana on his trip to California?
 
 
 51
 A. Junior had a free vacation.
 
 
 52
 (App. at 210). Terry denies making this trip at all.
 
 
 53
 There is credible circumstantial evidence supporting the district court's determination that Terry was more than just a "tourist" on the trip to California. During the trip out to California, the van was pulled over by the police who discovered a secret compartment that Denny and another person had installed in the van to hide the marijuana. Terry then drove the van back to Columbus, thus enabling Denny to bring back the 80 pounds of marijuana to Columbus by bus. That Terry helped Denny with the trip, coupled with his later involvement in other marijuana activity, makes it reasonable to conclude that Terry assisted Mike Denny with the purchase and transportation of the marijuana. The district court's conclusion is not clearly erroneous.
 
 
 54
 B. Whether the court should have permitted Terry an extra level deduction for acceptance of responsibility
 
 
 55
 Terry received a two-level reduction for acceptance of responsibility but claims that he should have received another level reduction because he notified the authorities of his intention to plead guilty. Section 3E1.1 states in pertinent part:
 
 
 56
 If the defendant clearly qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted the authorities in the investigation or prosecution of his own misconduct by ...
 
 
 57
 (2) timely notifying authorities of his intention to enter a plea of guilty ...
 
 
 58
 decrease the offense level by 1 additional level.
 
 
 59
 That Terry first notified Assistant U.S. Attorney Michael Burns of his intention to plead guilty just before the scheduled trial date undermines his argument that his notification was "timely". Terry nevertheless explains that his notification would have been timely except for the fact that Burns told counsel for all the defendants that no guilty pleas would be accepted unless all defendants joined. But the "all-or-nothing" offer concerned an offer to plea to something less than that described in the Indictment; there was nothing that precluded Terry from offering to plead to the Indictment. Terry, in short, was holding out for a better deal. A court's factual determination that the plea was not timely is to be upset only if clearly erroneous. The court's decision was not clearly erroneous.
 
 
 60
 For these reasons, we AFFIRM.
 
 
 
 *
 Hon. John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Augarten also argues that Mason would present testimony concerning the government's obstruction of justice claim: Mason was to testify that Augarten never threatened Honaker. This testimony would not have been relevant because the government had chosen not to pursue an obstruction-of-justice enhancement based on alleged threats Augarten made to Honaker. (Sent.Tr. 252)
 
 
 [2]
 Augarten's supplemental brief raises an additional point. He complains because the court refused to his lawyer to ask Honaker about some false statements he made on some traffic tickets. Honaker apparently had incorrectly identified himself as "Donald Honaker" on some traffic tickets in order to preserve his driving privileges. (App. at 187). This argument is meritless. The district court sat through hours of Honaker's testimony and had plenty of opportunity to evaluate his credibility