**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0170n.06

No. 10-2128

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Feb 13, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOSE CASTRO-RAMIREZ, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MARTIN, SUTTON and KETHLEDGE, Circuit Judges.

SUTTON, Circuit Judge.  A federal jury convicted Jose Castro-Ramirez of numerous healthcare-fraud offenses.  He challenges several evidentiary rulings, the jury instructions, the sufficiency of the evidence and the reasonableness of his sentence.  We affirm.

I.

In 2009, a federal grand jury indicted Jose Castro-Ramirez and fifteen other defendants in connection with a wide-ranging scheme to commit Medicare fraud.  The grand jury charged Castro-Ramirez with one count of conspiracy to commit healthcare fraud, eleven counts of healthcare fraud and one count of conspiracy to launder money.  *See* 18 U.S.C. §§ 1349, 1347, 1956(h).

The government introduced evidence at trial showing that Castro-Ramirez, a doctor, signed Medicare forms authorizing physical and occupational therapy for numerous individuals whom he

never evaluated. Sometimes, he filled out as many as fifty forms at a time while sitting in his garage; other times, he gave pre-signed forms to a co-conspirator to fill out at a later date. Several therapists certified they had seen patients when they had not, billing Medicare more than $18 million for the illusory services and splitting the proceeds with conspirators. Castro-Ramirez also billed Medicare for approximately $1.4 million in connection with perfunctory or non-existent medical home visits. To recruit Medicare beneficiaries to join the scheme, Castro-Ramirez gave them prescriptions for narcotics and other controlled substances, ultimately writing over 50,000 prescriptions to 479 "patients."

The jury convicted Castro-Ramirez on all counts. The court sentenced him to 120 months on the fraud counts and 168 months on the money-laundering count, to be served concurrently.

## II.

### A.

The district court did not abuse its discretion in excluding several pieces of evidence. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

*Prior acquittal*. The court properly excluded testimony that Castro-Ramirez was acquitted of healthcare fraud charges in an earlier, unrelated trial. Testimony about a prior acquittal is "evidence of assertions made outside the . . . trial, offered to show the truth of the matters alleged"—the essence of inadmissible hearsay. *McKinney v. Galvin*, 701 F.2d 584, 586 n.5 (6th Cir.

1983) (citation omitted). Compounding the general reliability concerns associated with hearsay is the reality that an acquittal "may not [re]present a determination of innocence, but rather only a decision that the prosecution has not met its burden of proof beyond a reasonable doubt." *United States v. Gricco*, 277 F.3d 339, 353 (3d Cir. 2002). "[T]he danger of jury confusion" posed by evidence of prior acquittals "outweigh[s] the evidence's limited probative value." *Id.*

But this was a special case, Castro-Ramirez responds. He did not want to offer testimony about his acquittal for its truth but because the existence of the trial itself related to his defense. The earlier trial took place during the first several months of the conspiracy, and it accounted for $200,000 in payments he received from one of his co-conspirators. They were just loans to pay his defense costs, he says, not proceeds from the conspiracy.

The problem is that Castro-Ramirez remained free to present this explanation to the jury, as the district court did not prohibit him from discussing the earlier trial, just the verdict. Castro-Ramirez insists that he could not tell the jury he had been charged with healthcare fraud once before without answering the pregnant question left by that evidence: Was he convicted? "No" is all he wanted to add. But that is just what the hearsay rules prohibit. What he wanted to do (convince the jury he did not commit the prior offense) amounted to the introduction of evidence of a prior acquittal for its truth—and nothing more. The court permissibly excluded the evidence.

*Laptop.* Nor did the court err in excluding Castro-Ramirez's laptop. He claimed that computer files contained additional information about some of his patients as well as maps used to

make the purported home visits. Rather than introduce that subset of files, however, Castro-Ramirez asked to admit the computer itself, which was no more appropriate than rolling the entire contents of his home office, filing cabinets and all, into the jury room. A court may insist that a party limit the submitted evidence to the documents and folders that bear on his case, admitting only what satisfies the Rules of Evidence and excluding other materials in the container, whether that container is a cardboard banker's box or a computer file system.

*Medicare submissions*. No error occurred when a government auditor testified for the prosecution about the Medicare submissions stemming from home visits that Castro-Ramirez purported to perform in Michigan while outside the State. After defense counsel asked the witness whether Castro-Ramirez made mistakes in his paperwork, he answered he "wouldn't know." R. 374 at 5. On redirect, though, he pointed out that the suspicious filings took place over several years, cutting against "the inference that this was a billing mistake." *Id.* at 16. Returning to the topic, defense counsel asked the auditor whether he had interviewed Castro-Ramirez about "those mistakes." *Id.* at 22. The auditor said he had not, and acknowledged that "without having interviewed" Castro-Ramirez he could not rule out the possibility of mistake. *Id.* at 23.

Castro-Ramirez protests that the auditor's testimony violated Rule 404(b)'s prohibition on using "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person." Fed. R. Evid. 404(b). But this was not evidence of *other* crimes. It was evidence about the *charged* crime, which Rule 404(b) nowhere excludes.

Castro-Ramirez also objects to the auditor's statement that he could not rule out the possibility of mistake without "interview[ing]" Castro-Ramirez, an impermissible comment on his Fifth Amendment right not to testify. Br. at 25. But this argument stretches the sequence of events to the breaking point. It was *defense counsel* who asked whether the auditor had interviewed Castro-Ramirez. Having asked the question, Castro-Ramirez cannot fault the auditor for answering it, or for referring back to his answer in explaining why he could not rule out the possibility of mistake. *See United States v. Demmler*, 655 F.3d 451, 458–59 (6th Cir. 2011).

## B.

*Jury instructions*. Castro-Ramirez argues that the district court should have instructed the jury that it could not find him guilty if he acted in good faith. No such objection was made during the trial, requiring us to review it only for plain error, asking whether any clear error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vasquez*, 560 F.3d 461, 470 (6th Cir. 2009). Nothing of the sort happened. Even assuming that a good faith instruction would have been permissible or even warranted, the other instructions made up for any deficiency. The district court instructed the jury that "[c]arelessness, or negligence or foolishness on [Castro-Ramirez's] part is not the same as knowledge, and is not enough to convict." R. 383 at 57. Speaking to the individual healthcare-fraud counts, the court added that the jury would have to find that Castro-Ramirez acted "voluntarily and intentionally and not because of mistake or some other innocent reason," *id.* at 58–59. The district court also told them that they could convict on those charges only if they found that Castro-Ramirez "acted with the intent to defraud." *Id.* at 58.

- 5 -

Referring to the conspiracy charges, the district court instructed the jury that one of the required elements of each was that the defendant "knowingly and voluntarily joined the conspirac[ies]," aware that they were pursuing fraudulent ends. *Id.* at 60, 61. Taken together, these instructions "encompassed" the information a good-faith instruction would have covered. *United States v. Tarwater*, 308 F.3d 494, 510 (6th Cir. 2002). Any (potential) failure to give a specific good-faith instruction did not impair Castro-Ramirez's defense.

C.

*Sufficiency of the evidence*. Castro-Ramirez *suggests* that the evidence does not support the verdict, offering three conclusory sentences that do just that—that suggest but do not even begin to show why this is so. *See* Br. at 29. Perfunctory arguments deserve perfunctory answers. Castro-Ramirez has forfeited any challenge to the sufficiency of the evidence. *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999).

D.

*Sentencing*. Castro-Ramirez's sentencing arguments fare no better. He questions the court's amount-of-loss calculations but does not tell us how to reach a more accurate number. This argument, too, is forfeited. *See Layne*, 192 F.3d at 566–67.

He also objects to the court's "sophisticated means" enhancement, U.S.S.G. § 2B1.1(b)(10)(c), a decision reviewed for clear error. *United States v. Kraig*, 99 F.3d 1361, 1371

(6th Cir. 1996). The evidence showed that Castro-Ramirez was involved for years in a coordinated and tiered conspiracy, one with ample indicia of sophistication. Above all, "[c]areful execution and coordination over an extended period enabled [Castro-Ramirez and his co-conspirators] to bilk [Medicare] and reduce the risk of detection." *United States v. Rettenberger*, 344 F.3d 702, 709 (7th Cir. 2003).

The district court correctly concluded that Castro-Ramirez's offense involved the "conscious or reckless risk of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(14)(A). He wrote tens of thousands of prescriptions for controlled substances to convince several Medicare beneficiaries to join the scheme. It may be true, as he points out, that these drugs have "legitimate and therapeutic uses . . . in a medically appropriate context." Br. at 33. But that is beside the point. The district court found that the drugs were dangerous and medically unnecessary in *this* context, and Castro-Ramirez offers nothing to show otherwise.

Also unavailing is Castro-Ramirez's challenge to the enhancement for being a manager or supervisor of the conspiracy. U.S.S.G. § 3B1.1(b). Again he must overcome the hurdle of clear error review, *United States v. Akrawi*, 982 F.2d 970, 974 (6th Cir. 1993), and again he comes up short. In determining whether a defendant served in a leadership role, the district court may look to the nature of the defendant's participation in the conspiracy, his role in recruiting accomplices, his claim to a larger share of the conspiracy's profits and other related considerations. *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007). The relevant evidence showed that Castro-Ramirez profited extensively from his participation in the scheme, that his fraudulent prescriptions played a

key role in recruiting new participants and that he showed his co-conspirators how to avoid detection by filling their prescriptions at multiple pharmacies. This evidence supports the court's finding.

Castro-Ramirez argues that his sentence was substantively unreasonable because the district court unduly emphasized the seriousness of the offense and the need for deterrence. But the court's emphasis on those factors was consistent with the sentencing considerations prescribed by 18 U.S.C. § 3553(a). Castro-Ramirez points to nothing that would displace the presumption of reasonableness afforded his bottom-of-the-guidelines sentence. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

III.

For these reasons, we affirm.